290 S.E.2d 902

**CINCINNATI MILACRON COMPANY, a Corporation**

v.

**David C. HARDESTY, Jr., as Tax Commissioner of The State of West Virginia.**

**No. 14977.**

Supreme Court of Appeals of West Virginia.

Feb. 11, 1982.

Dissenting Opinion April 30, 1982.

McHugh, J., dissented and filed opinion.

Chauncey H. Browning, Jr., Atty. Gen., and Michael G. Clagett, Asst. Atty. Gen., Charleston, for appellant.

Love, Wise, Robinson & Woodroe, Harry P. Henshaw, III, and Laird Minor, Charleston, for appellee.

NEELY, Justice:

This case involves the legitimacy of the imposition of the West Virginia Business and Occupation Tax on the activities conducted in this State by an out-of-state corporation involved in interstate commerce.

Under *J. C. Penney Co. Inc. v. Hardesty,* 164 W.Va. 525, 264 S.E.2d 604 (1979) and *Western Maryland Railway v. Goodwin,* 167 W.Va. 804, 282 S.E.2d 240 (1981), we find that there is a sufficient nexus to sustain the imposition of the tax in this case.

Cincinnati Milacron Company is a corporation headquartered in Cincinnati, Ohio and qualified to do business in West Virginia. It has five manufacturing divisions, of which two, the Machine Tool Division and the Products Division, do business in West Virginia. The Machine Tool Division is, according to Cincinnati Milacron's corporate tax manager, the world's largest machine tool builder. The Products Division makes various types of grinding wheels and a machine oil substitute.

Cincinnati Milacron brought this case in the Circuit Court of Kanawha County as an appeal of the Tax Commissioner's administrative decision. The commissioner's decision found Cincinnati Milacron to be liable for delinquent business and occupation taxes for the period 1 January 1971 to 31 December 1975 in the amount of $5,152.35. In its memorandum opinion of 13 December 1979, the Circuit Court of Kanawha County held that insufficient nexus existed to tax Cincinnati Milacron on its sales to West Virginia customers. However, the court did find sufficient nexus to tax the company's service activities occurring in West Virginia.

During the time period in question, the Machine Tool Division had one field sales engineer, who lived in Marietta, Ohio, soliciting sales in West Virginia. The sales engineer's total sales for those years were $7,084,248 of which $3,292,449 were to West Virginia buyers. The division's sales during that time were one billion dollars. It is estimated that the field sales engineer whose sales region encompassed West Virginia spent forty-five percent of his time in West Virginia.

Upon visiting a customer, the field sales engineer would discuss the specific problems of the customer or the customer's projected needs. The sales engineer would then suggest a Machine Tool Division prod-

uct to the customer. If no Machine Tool Division product could solve the problem or do the job, the sales engineer would send the particulars of the problem to Cincinnati, where specialists would design an appropriate tool. In the end, the Cincinnati Milacron home office made all decisions concerning whether to accept or reject orders from customers in West Virginia.

Once an agreement had been reached, a purchaser of a machine would come to the factory before shipment to make sure that the machine performed satisfactorily. The machine was then shipped FOB factory. Generally the machine was installed by the purchaser. After the sale and installation, the field sales engineer would return to the customer to see how the machine was performing. If there were any problems, the sales engineer would forward the matter to the service department. A representative from the service department would then be sent to correct the problem at the customer's place of business.

The Products Division worked in the same manner except that its sales personnel spent less time in West Virginia. The three sales personnel who had some responsibility for West Virginia during the years in question spent an average of three percent of their time in the state. When the tax commissioner found that West Virginia sales accounted for five percent of the three Products Division salesmen's sales, he applied the tax to gross income from this division also.

On the above facts the circuit court held that there was not a sufficient nexus to tax Cincinnati Milacron on its *sales* to West Virginia customers. It did find sufficient nexus to tax the *service* activities that occurred in the state. The tax commissioner has appealed claiming that the circuit court erred in holding that an insufficient nexus existed with respect to the sales.

■ As we stated in *Western Maryland Railway Co. v. Goodwin*, 167 W.Va. 804, 282 S.E.2d 240, 244 (1981), "purposive, revenue generating activities in the State are sufficient to render a person liable for taxes." In that case we held that interstate haulers passing through West Virginia had to pay West Virginia business and occupation taxes on an apportioned share of their gross receipts. Similarly, this Court found that an out-of-state catalog center doing mail-order business with customers in West Virginia could be taxed for that portion of its sales made to West Virginia customers. *J. C. Penney Co., Inc. v. Hardesty*, 164 W.Va. 525, 264 S.E.2d 604 (1979). In *J. C. Penney*, the taxpayer used neither employees nor facilities in West Virginia for the conduct of its mail-order business. Nevertheless, we found that there was a sufficient nexus between its business with West Virginia purchasers and the state. We observed that the taxpayer used various West Virginia services such as collection agencies and credit bureaus in the course of running its mail-order business.

■ In this case the field sales engineers came to West Virginia to conduct "purposive revenue generating activities in the state." Clearly, the sales engineers came to solicit business for their employer. We further note that the maintenance service offered by the taxpayer which was held by the circuit court to be taxable was definitely an enticing aspect of buying a Machine Tool Division product. West Virginia customers knew that they could depend on getting repair services once they bought the machines. The services offered by the Machine Tool Division's Service Department were available to its customers only. Hence, we should view both the sales and the service as part of an integrated taxable entity. To do otherwise would be to wax in semantic technicalities without substance. *See generally J. C. Penney, supra*, 164 W.Va. at 546, 264 S.E.2d at 617 (Miller, J., concurring).

With respect to the sales of the Products Division of Cincinnati Milacron Company, we find that the activities of that division's sales representatives within the state of West Virginia provide a substantial nexus to validate the tax on its apportioned sales. This finding is in accordance with both *General Motors Corp. v. Washington*, 377 U.S. 436, 84 S.Ct. 1564, 12 L.Ed.2d 430 (1964) and *Standard Pressed Steel v. Department of Revenue*, 419 U.S. 560, 95 S.Ct. 706, 42 L.Ed.2d 719 (1975). In both of

these cases the taxpayer was held liable for sales made directly between out-of-state manufacturing plants and in-state purchasers. In *Standard Pressed Steel*, the taxpayer had one employee in Washington who, operating out of his home, kept in contact with the Boeing Company to monitor its needs for his employer's product. The United States Supreme Court unanimously upheld the state tax on the receipts of the sales.

Accordingly, for the reasons stated above the ruling of the Circuit Court of Kanawha County is reversed and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

McHUGH, Justice, dissenting:

This case is another in the steadily increasing number of cases in West Virginia imposing the business and occupation tax on an out-of-state taxpayer. It revolves solely around the question of whether there was sufficient nexus to sustain the tax on the activities of the taxpayer in West Virginia. A detailed analysis of the majority opinion is not necessary. It is sufficient to note that the result in the case now before this Court illustrates the extreme circumstances on which this Court will seize to impose a business and occupation tax on an out-of-state taxpayer. The facts were stated succinctly in the circuit judge's opinion.

The Products Division had three non-resident salesmen who solicited sales in West Virginia. These salesmen also solicited sales in Kentucky, Pennsylvania and Maryland. Petitioner's Exhibit No. 7 entitled 'B & O Tax Questionnaire— Products Division', indicates that 5%, 18%, and less than 1%, respectively, of these non-resident salesmen's sales were to West Virginia customers and 3½%, 5%, and less than 1%, respectively, of their time was spent in West Virginia. The exhibit also indicates that the Products Division performed no installation, follow-up testing, repairs or maintenance, or other service within West Virginia.

The Machine Tool Division had only one salesman soliciting in West Virginia. This non-resident salesman was listed as a field sales engineer and spent approximately forty-five percent of his time in the State. About the same percentage of his sales were to West Virginia customers. The record indicates that although he did no actual design work within West Virginia, he had the ability to handle certain engineering problems which might arise.

All of the taxpayer's salesmen sent their orders out-of-state for approval. If an order was accepted, the items were shipped by common carrier to the customer f. o. b. The actual installation of all machinery shipped into West Virginia was performed by the customer although the taxpayer would assist in a general supervisory manner. The taxpayer did on occasion send a serviceman or engineer into West Virginia in order to repair a machine. However, the taxpayer encouraged customers to send their employees to Cincinnati, Ohio to learn how to operate and service machinery. The audit amounts disclosed that the taxpayer's gross income from service in West Virginia was about eight-tenths of one percent of gross income from wholesale sales to West Virginia purchasers.

. . . .

Here the only contacts for the wholesale sales business were (1) solicitation of orders by four non-resident representatives who spent, respectively, about forty-five, eighteen, five, and less than one percent of their total time soliciting orders from West Virginia purchasers, and (2) sporadic intrastate repair or maintenance service work, the gross income from which was less than one percent of the gross income from wholesale sales to West Virginia purchasers of the machinery being repaired or maintained.

Armed with the cursory opinions in *J. C. Penney Co., Inc. v. Hardesty*, 164 W.Va. 525, 264 S.E.2d 604 (1979); *Western Maryland Railway v. Goodwin*, 167 W.Va. 805, 282 S.E.2d 240 (1981) and this case, the taxing authorities of this State need not

fear being hindered by sound legal principles from our sister states which have similar statutes. *See, e.g., Ind. Dept. of State Rev. v. J. C. Penney Co.*, Ind.App., 412 N.E.2d 1246 (1981).

There has been a steady erosion in the nexus required. An example of the rapacious designs of the state authorities appears in the tax commissioner's brief where the following words are written: "Nexus is automatically met by presence in West Virginia." That doctrine is uncomplicated and simple to apply. I fear that this Court is being lured into that greedy embrace.

I always thought that a sufficient nexus between the activities of the taxpayer and the State was required. *See, e.g., Maryland v. Louisiana*, 451 U.S. 725, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981); *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977); *Standard Pressed Steel Co. v. Dept. of Revenue*, 419 U.S. 560, 95 S.Ct. 706, 42 L.Ed.2d 719 (1975); *General Motors Corp. v. Washington*, 377 U.S. 436, 84 S.Ct. 1564, 12 L.Ed.2d 430 (1964); *Virginia Foods of Bluefield, Va., Inc. v. Dailey*, 161 W.Va. 94, 239 S.E.2d 770 (1977). How much longer will sufficient modify nexus in West Virginia?

It is my opinion that the decision of the circuit judge in this case was articulate, well reasoned and supported by authority. On the facts of this case, I do not believe that there was sufficient nexus to sustain the tax on the sales activities of the taxpayer in West Virginia. I also agree with the circuit judge that the taxpayer is taxable on its service activities in this state. I would affirm the ruling of the Circuit Court of Kanawha County.