303 S.E.2d 737

**WILLIAMS AND CO., INC., etc.**

v.

**Richard L. DAILEY, State Tax Commr., etc.**

No. 15356.

Supreme Court of Appeals of West Virginia.

May 25, 1983.

Chauncey H. Browning, Atty. Gen., and Michael G. Clagett, Asst. Atty. Gen., Charleston, for appellant.

Spilman, Thomas, Battle & Klostermeyer and G. Thomas Battle, Charleston, for appellee.

PER CURIAM:

This is an appeal by the State Tax Commissioner from a ruling of the Circuit Court of Kanawha County which invalidated an assessment made under the West Virginia Business and Occupation Tax on certain sales of the taxpayer, Williams and Company, Inc. For the reasons set forth below, we find that there is a sufficient nexus to support the imposition of the assessed tax, and we reverse the decision of the circuit court.

Williams and Company is a Pennsylvania corporation which maintains its home offices in Pittsburgh and is qualified to do business in West Virginia. It is a distributor of ferrous and non-ferrous metals and other related industrial products including industrial safety and fire equipment, refrigeration and air conditioning equipment, welding machines, and metal tube fittings and fasteners.

Williams and Company brought this case to the circuit court as an appeal of the Tax Commissioner's administrative decision. That decision found the company to be liable for delinquent business and occupation taxes for the period January 1, 1971 through December 31, 1974 in the amount of $15,496.09. The delinquent taxes were on sales made to West Virginia customers from the company's Pittsburgh office. The circuit court reversed the commissioner's decision and held that insufficient nexus existed to tax Williams and Company on the sales in question.

The company has three branch stores located in West Virginia. There is a full line warehouse and sales office in South Charleston and refrigeration stores in Huntington and Parkersburg. For sales purposes the South Charleston location services customers in southern West Virginia and most of central West Virginia, essentially the area not covered by the company's Pittsburgh office. Williams and Company owns three trucks and ten automobiles which are licensed in West Virginia and assigned to one of the three branch stores. Eighteen counties in the northern panhandle and northern part of the State are serviced by the Pittsburgh office. The sales made from this office are the subject of this appeal; the business and occupation tax on sales made from the three branch stores in West Virginia was duly reported and paid and is not at issue.

The company's method of making sales from the Pittsburgh location involved the use of two "district representatives" who were assigned the northern West Virginia area as part of their sales territory. They also worked in Maryland and Pennsylvania and were residents of Pennsylvania. The representatives would visit customers to discuss their product requirements and potential or existing problems with regard to the product. Although the district representative would recommend certain products on the basis of the customer's need, he could only solicit orders for the product; he had no authority to accept the order. All orders were accepted in the Pittsburgh sales office. Although the representative might pick up an order at the time of his visit and take it back to Pittsburgh with him a majority of orders were submitted by phone or mail.

In the event that a customer had a technical problem relating to the use of one of the company's products, one of two "specialists" assigned to the northern part of the State would call on the customer to provide special assistance. Like the district representatives, the specialists had no authority to take or accept orders from the customers. Products sold to customers in northern West Virginia were shipped from Pittsburgh by common carrier and payment was made to the Pittsburgh office.

In his decision the tax commissioner noted that the company "also stated in a submission after the hearing that the four

employees previously indicated to be responsible for the ... northern West Virginia operations average approximately 12.5% of their time per year working with customers in West Virginia." At the administrative hearing, the treasurer of Williams and Company estimated that the four employees together spent less time in West Virginia than one full-time employee would spend.

■ Throughout this proceeding, Williams and Co. has taken the position that there is not a substantial nexus between the sales from their Pittsburgh office to West Virginia customers and the State of West Virginia to sustain the imposed tax. In the sole syllabus point of *Cincinnati Milacron v. Hardesty*, 170 W.Va. 138, 290 S.E.2d 902 (1982), we recently said:

> Under *J.C. Penney Co., Inc. v. Hardesty*, 164 W.Va. 525, 264 S.E.2d 604 (1979) and *Western Maryland Railway v. Goodwin*, 167 W.Va. 804, 282 S.E.2d 240 (1981), an out-of-state corporation which sends 'field sales engineers' into West Virginia to solicit orders from West Virginia customers has a sufficient nexus with this State to sustain the imposition of the West Virginia Business and Occupation Tax.

Cincinnati Milacron's Machine Tool Division had one field sales engineer who lived in Marietta, Ohio and spent about forty-five percent of his time soliciting orders in West Virginia. The division's sales during the audit period were one billion dollars; only $3,292,449 were to West Virginia customers. The sales engineer would visit a customer and discuss the customer's specific problem or need. The sales engineer would then suggest the appropriate product to the customer if one existed; if it did not, the engineer would contact the office in Cincinnati where specialists would then design a suitable tool for that particular customer.

The home office in Cincinnati rejected or accepted all orders from West Virginia customers. All machinery and tools were shipped FOB factory and were generally installed by the purchaser. If a problem with the equipment arose, the sales engineer would contact the service department and a representative would be sent to the customer's place of business to correct the problem.

On these facts the Court found that Cincinnati Milacron's activities were sufficient to render the company liable for taxes. We cited *Western Maryland Railway Co. v. Goodwin*, 167 W.Va. 804, 282 S.E.2d 240, 244 (1981) where we concluded that "purposive, revenue generating activities in the State are sufficient to render a person liable for taxes."

■ In the case before us, as in *Cincinnati Milacron*, it is clear that the "district representatives" and the "specialists" came to West Virginia to solicit business for their employer, i.e., to conduct "purposive, revenue generating activities." The procedure used by Williams and Co. is similar to that employed by Cincinnati Milacron. The trips made into West Virginia by the four "salesmen" were intended to be revenue generating. Otherwise, no purpose would have been served in having the four travel to this State.

In addition, the fact that the taxpayer maintained a warehouse and sales office in South Charleston leads us to conclude that all of the activities of Williams and Co. in the State should be considered as part of an integrated taxable entity. The circuit court found that the taxpayer's personnel and facilities in West Virginia were "shown not to have contributed in fact to the sales of the customers in the northern counties, except, perhaps, only potentially." It is reasonable to assume that a customer would deal with Williams and Co. because there were local offices at which he could utter a complaint and obtain relief if the out-of-state salesmen were unavailable. Also, the record indicates that there was a fringe territory into which salesmen from the Pittsburgh office might venture—the territory that normally would be covered by representatives from the South Charleston location. In addition, orders could be given by customers to either the Pittsburgh or the South Charleston office, although credit would be given to the proper location. Under these facts, we conclude

that we must view the activities of Williams and Co. as an integrated taxable entity. "To do otherwise would be to wax in semantic technicalities without substance." *Cincinnati Milacron Company v. Hardesty, supra,* 170 W.Va. at 140, 290 S.E.2d at 904.

Accordingly, for the reasons stated above, the judgment of the Circuit Court of Kanawha County is reversed and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.