STANDARD PRESSED STEEL CO. *v.* DEPART-
MENT OF REVENUE OF WASHINGTON

No. 73–1697.   Argued December 16, 1974—Decided January 22, 1975

DOUGLAS, J., wrote the opinion for a unanimous Court.

*Kenneth L. Cornell* argued the cause for appellant.
With him on the briefs was *Harold S. Fardal.*

*Slade Gorton,* Attorney General of Washington, argued
the cause for appellee.   With him on the brief were
*Timothy R. Malone,* Senior Assistant Attorney General,
and *William D. Dexter,* Assistant Attorney General.

Opinion of the Court by MR. JUSTICE DOUGLAS, announced by MR. CHIEF JUSTICE BURGER.

Appellant, a manufacturer of industrial and aerospace fasteners (nuts and bolts generally), has its home office in Pennsylvania, one manufacturing plant there and another in California. Its principal customer in the State of Washington is the Boeing Company, in Seattle. In the years relevant here it had one employee, one Martinson, in Washington who was paid a salary and who operated out of his home near Seattle. He was an engineer whose primary duty was to consult with Boeing regarding its anticipated needs and requirements for aerospace fasteners and to follow up any difficulties in the use of appellant's product after delivery. Martinson was assisted by a group of engineers of appellant who visited Boeing about three days every six weeks, their meetings being arranged by Martinson. Martinson did not take orders from Boeing; they were sent directly to appellant. Orders accepted would be filled and shipment made by common carrier to Boeing direct, all payments being made directly to appellant. Martinson had no office except in his home; he had no secretary; but appellant maintained an answering service in the Seattle area which received calls for Martinson, bills for that service being sent direct to appellant.

The State Board of Tax Appeals found that the activities of Martinson were necessary to appellant in making it aware of which products Boeing might use, in obtaining the engineering design of those products, in securing the testing of sample products to qualify them for sale to Boeing, in resolving problems of their use after receipt by Boeing, in obtaining and retaining good will and rapport with Boeing personnel, and in keeping the invoicing personnel of appellant up to date on Boeing's lists of purchasing specialists or control buyers. The Board sustained the assessment of the Washington business and occupation

tax, Wash. Rev. Code § 82.04.270 (1972), levied on the unapportioned gross receipts of appellant resulting from its sale of fasteners to Boeing.[1] The Superior Court affirmed the Board, and the Court of Appeals in turn affirmed, 10 Wash. App. 45, 516 P. 2d 1043 (1973). The Supreme Court denied review. The constitutionality, as applied, of the Washington statute being challenged, we noted probable jurisdiction, 417 U. S. 966 (1974).

Appellant argues that imposition of the tax violates due process because the in-state activities were so thin and inconsequential as to make the tax on activities occurring beyond the borders of the State one which has no reasonable relation to the protection and benefits conferred by the taxing State, *Wisconsin* v. *J. C. Penney Co.*, 311 U. S. 435 (1940). In other words the question is "whether the state has given anything for which it can ask return," *id.*, at 444. We think the question in the context of the present case verges on the frivolous. For appellant's employee, Martinson, with a full-time job within the State, made possible the realization and continuance of valuable contractual relations between appellant and Boeing.

The case is argued on the interstate commerce aspect as if Washington were taxing the privilege of doing an interstate business with only orders being sent from within the State and filled outside the State, *McLeod* v. *Dilworth Co.*, 322 U. S. 327 (1944). Much reliance is placed on *Norton Co.* v. *Department of Revenue,* 340 U. S. 534 (1951), where a Massachusetts corporation qualified to do business in Illinois and maintained an office there from which it made local sales at retail. It was accordingly subjected to the Illinois gross receipts tax on retailers. There were, however, orders sent by Illinois buyers directly to Massachusetts, filled there, and shipped directly

---

[1] Appellant paid the taxes under protest, and it is stipulated that should appellant prevail it would be entitled to a refund of $33,444.91.

to the customer. As to these a divided Court held that the income from those sales was not taxable by Illinois by reason of the Commerce Clause. The disagreement in the Court was not over the governing principle; it concerned the burden of showing a nexus between the local office and interstate sales—whether a nexus could be assumed and whether the taxpayer had carried the burden of establishing its immunity.

*General Motors Corp.* v. *Washington,* 377 U. S. 436 (1964), is almost precisely in point so far as the present controversy goes. While the zone manager for sales of the Chevrolet, Pontiac, and Oldsmobile divisions was in Portland, Ore., district managers lived and operated within Washington. Each operated from his home, having no separate office. Each had from 12 to 30 dealers under supervision. He called on each of these dealers, kept tabs on the sales forces, and advised as to promotional and training plans. He also advised on used car inventory control. He worked out with the dealer estimated needs over a 30-, 60-, and 90-day projection of orders. General Motors also had in Washington service representatives who called on dealers regularly, assisted in any troubles experienced, and checked the adequacy of the service department's inventory. They conducted service clinics, teaching dealers and employees efficient service techniques. We held that these activities served General Motors as effectively when administered from "homes" as from "offices" and that those services were substantial "with relation to the establishment and maintenance of sales, upon which the tax was measured," *id.,* at 447.

We noted in *General Motors* that a vice in a tax on gross receipts of a corporation doing an interstate business is the risk of multiple taxation; but that the burden is on the taxpayer to demonstrate it, *id.,* at 449. The corporation made no such showing there. Nor is any effort made to establish it here. This very tax was

involved in *Gwin, White & Prince, Inc.* v. *Henneford,* 305 U. S. 434 (1939). The taxpayer was a Washington corporation, doing business there and shipping fruit from Washington to places of sale in the various States and in foreign countries. The Court held the tax, as applied, unconstitutional under the Commerce Clause.

> "Here the tax, measured by the entire volume of the interstate commerce in which appellant participates, is not apportioned to its activities within the state. If Washington is free to exact such a tax, other states to which the commerce extends may, with equal right, lay a tax similarly measured for the privilege of conducting within their respective territorial limits the activities there which contribute to the service. The present tax, though nominally local, thus in its practical operation discriminates against interstate commerce, since it imposes upon it, merely because interstate commerce is being done, the risk of a multiple burden to which local commerce is not exposed." *Id.,* at 439.

In the instant case, as in *Ficklen* v. *Shelby County Taxing District,* 145 U. S. 1 (1892),[2] the tax is on the gross receipts from sales made to a local consumer, which may have some impact on commerce. Yet as we said in *Gwin, White & Prince, supra,* at 440, in describing the tax in *Ficklen,* it is "apportioned exactly to the activities taxed," all of which are intrastate.

*Affirmed.*

---

[2] In that case the taxpayers did business as brokers in Tennessee. They solicited local customers and sent their orders to out-of-state vendors who shipped directly to the purchaser. Tennessee levied a tax on their gross commissions. The Court, in distinguishing the "drummer" cases illustrated by *Robbins* v. *Shelby County Taxing District,* 120 U. S. 489 (1887), stated that in *Ficklen* Tennessee did not tax more than its own internal commerce.