# NATIONAL GEOGRAPHIC SOCIETY *v.* CALIFORNIA BOARD OF EQUALIZATION

No. 75–1868.  Argued February 23, 1977—Decided April 4, 1977

*Arthur B. Hanson* argued the cause for appellant. With him on the briefs were *Michael N. Khourie, Glenn L. Archer, Jr.,* and *Michael C. Durney.*

*Philip M. Plant,* Deputy Attorney General of California, argued the cause for appellee. With him on the brief were *Evelle J. Younger,* Attorney General, and *Ernest P. Goodman,* Assistant Attorney General.*

MR. JUSTICE BRENNAN delivered the opinion of the Court.

Appellant National Geographic Society, a nonprofit scientific and educational corporation of the District of Columbia, maintains two offices in California that solicit advertising copy for the Society's monthly magazine, the National Geographic Magazine. However, the offices perform no activities related to the Society's operation of a mail-order business for the sale from the District of Columbia of maps, atlases, globes, and books. Orders for these items are mailed from California directly to appellant's Washington, D. C., headquarters on coupons or forms enclosed with announcements mailed to Society members and magazine subscribers or on order forms contained in the magazine. Deliveries are made by mail from the Society's Washington, D. C., or Maryland offices. Payment is either by cash mailed with the order or after a mailed billing following receipt of the merchandise. Such mail-order sales to California residents during the period involved in this suit aggregated $83,596.48.

---

*\*Harold T. Halfpenny* filed a brief for the Direct Mail/Marketing Assn., Inc., as *amicus curiae* urging reversal.

*Louis J. Lefkowitz,* Attorney General, *Samuel A. Hirshowitz,* First Assistant Attorney General, and *Philip Weinberg,* Assistant Attorney General, filed a brief for the State of New York as *amicus curiae* urging affirmance.

California Rev. & Tax. Code § 6203 (West Supp. 1976) requires every "retailer engaged in business in this state and making sales of tangible personal property for storage, use, or other consumption in this state" to collect from the purchaser a use tax in lieu of the sales tax imposed upon local retailers. The California Supreme Court held that appellant is subject to the statute as a " 'retailer engaged in business in this state,' " because its maintenance of the two offices brings appellant within the definition under § 6203 (a) that includes " '[a]ny retailer maintaining . . . an office . . . .' " 16 Cal. 3d 637, 642, 547 P. 2d 458, 460–461 (1976). Section 6204 makes the retailer liable to the State for any taxes required to be collected regardless of whether he collects the tax.[1] See *Bank of*

---

[1] The relevant sections of the Cal. Rev. & Tax. Code provide:

§ 6203 (West Supp. 1976).

"Except as provided by Sections 6292 and 6293 every retailer engaged in business in this state and making sales of tangible personal property for storage, use, or other consumption in this state, not exempted under Chapters 3.5 or 4 of this part, shall, at the time of making the sales or, if the storage, use, or other consumption of the tangible personal property is not then taxable hereunder, at the time the storage, use, or other consumption becomes taxable, collect the tax from the purchaser and give to the purchaser a receipt therefor in the manner and form prescribed by the board.

.      .      .      .

" 'Retailer engaged in business in this state' as used in this and the preceding section means and includes any of the following:

"(a) Any retailer maintaining, occupying, or using, permanently or temporarily, directly or indirectly, or through a subsidiary, or agent, by whatever name called, an office, place of distribution, sales or sample room or place, warehouse or storage place or other place of business."

§ 6204 (West 1970).

"The tax required to be collected by the retailer and any amount unreturned to the customer which is not tax but was collected from the customer under the representation by the retailer that it was tax constitutes debts owed by the retailer to this state."

The magazine is exempted from sales and use taxes as a "periodical." § 6362.

*America* v. *State Bd. of Equalization,* 209 Cal. App. 2d 780, 793, 26 Cal. Rptr. 348, 355 (1962).

The question presented by this case is whether the Society's activities at the offices in California [2] provided sufficient nexus between the out-of-state seller appellant and the State—as required by the Due Process Clause of the Fourteenth Amendment and the Commerce Clause—to support the imposition upon the Society of a use-tax-collection liability pursuant to §§ 6203 and 6204, measured by the $83,596.48 of mail-order sales of merchandise from the District of Columbia and Maryland. The California Supreme Court held that the imposition of use-tax-collection liability on the Society violated neither Clause, 16 Cal. 3d 637, 547 P. 2d 458 (1976).[3] We noted probable jurisdiction. 429 U. S. 883 (1976). We affirm.

---

[2] The offices are in San Francisco and Los Angeles and have been maintained since 1956. Each office was originally staffed with one salesman and one secretary, but each office has since increased its personnel to four. The basic function of the offices is to solicit advertising for the magazine, 16 Cal. 3d, at 640, 547 P. 2d, at 459–460. Sales of advertising copy by the two offices aggregate about $1 million annually. Tr. of Oral Arg. 6. During a nine-month period from August 1, 1963, to May 6, 1964, appellant Society also used these offices to make over-the-counter sales, upon which sales taxes were paid, of maps, atlases, globes, and books totaling $679.20 for the San Francisco office and $2,161.85 for the Los Angeles office. The California Supreme Court found it unnecessary to consider these sales in determining whether sufficient nexus was shown since the Society's office activities sufficed in its view adequately to prove sufficient nexus. 16 Cal. 3d, at 641 n. 6, 547 P. 2d, at 460 n. 6. We are of the same view.

[3] Although appellant's potential liability exceeds $180,000 and covers a nine-year period, *ibid.;* the assessment by the California Board of Equalization for the years involved in this case is $3,838.76, including interest and penalties. Appellant paid the assessment under protest and sued for its refund in State Superior Court and recovered a judgment. The California Court of Appeal, First Appellate District, affirmed. 121 Cal. Rptr. 77 (1975). The California Supreme Court reversed and sustained the assessment. 16 Cal. 3d 637, 547 P. 2d 458 (1976).

I

All States that impose sales taxes also impose a corollary use tax on tangible property bought out of State to protect sales tax revenues and put local retailers subject to the sales tax on a competitive parity with out-of-state retailers exempt from the sales tax. H. R. Rep. No. 565, 89th Cong., 1st Sess., 614 (1965). The constitutionality of such state schemes is settled. *Henneford* v. *Silas Mason Co.,* 300 U. S. 577, 581 (1937); *Monamotor Oil Co.* v. *Johnson,* 292 U. S. 86 (1934).[4]

But the limitation of use taxes to consumption within the State so as to avoid problems of due process that might arise from the extension of the sales tax to interstate commerce, see, *e. g., Nelson* v. *Sears, Roebuck & Co.,* 312 U. S. 359, 363 (1941); *Monamotor Oil Co.* v. *Johnson, supra,* at 95, does not avoid all constitutional difficulties. States necessarily impose the burden of collecting the tax on the out-of-state seller; the impracticability of its collection from the multitude of individual purchasers is obvious. *Miller Bros. Co.* v. *Maryland,* 347 U. S. 340, 343 (1954). However, not every out-of-state seller may constitutionally be made liable for payment of the use tax on merchandise sold to purchasers in the State. The California Supreme Court concluded, based on its survey of the relevant decisions of this Court, that the "slightest presence" of the seller in California established sufficient nexus between the State and the seller constitutionally to support the imposition of the duty to collect and pay the tax. The California court stated, 16 Cal. 3d, at 644, 547 P. 2d, at 462:

"We are satisfied that from the above cited decisions

---

[4] *Henneford* obviated the necessity for legislation sought by the National Asssociation of State Tax Administrators in the 73d through 76th Congresses to permit States to extend their sales taxes to certain interstate transactions. See H. R. Rep. No. 565, 89th Cong., 1st Sess., 613–615 (1965). Some 45 States and the District of Columbia require out-of-state sellers to collect use taxes on sales made to state residents. Brief for Direct Mail/Marketing Assn. as *Amicus Curiae* 4.

the following principle can be distilled and we thus hold: Where an out-of-state seller conducts a substantial mail order business with residents of a state imposing a use tax on such purchasers and the seller's connection with the taxing state is *not* exclusively by means of the instruments of interstate commerce, the *slightest presence* within such taxing state independent of any connection through interstate commerce will permit the state constitutionally to impose on the seller the duty of collecting the use tax from such mail order purchasers and the liability for failure to do so." (Emphasis supplied.)

Our affirmance of the California Supreme Court is not to be understood as implying agreement with that court's "slightest presence" standard of constitutional nexus. Appellant's maintenance of two offices in the State and solicitation by employees assigned to those offices of advertising copy in the range of $1 million annually, Tr. of Oral Arg. 6, establish a much more substantial presence than the expression "slightest presence" connotes. Our affirmance thus rests upon our conclusion that appellant's maintenance of the two offices in California and activities there adequately establish a relationship or "nexus" between the Society and the State that renders constitutional the obligations imposed upon appellant pursuant to §§ 6203 and 6204.[5] This conclusion is supported by several of our decisions.

The requisite nexus was held to be shown when the out-of-state sales were arranged by the seller's local agents working in the taxing State, *Felt & Tarrant Co.* v. *Gallagher,* 306 U. S. 62 (1939); *General Trading Co.* v. *Tax Comm'n,*

---

[5] Appellant Society argues that under the California Supreme Court's "slightest presence" test §§ 6203 and 6204 could be applied even if the Society maintained no offices in the State but merely owned a parking lot. But the sections were applied to appellant only because it maintained the offices. Appellant was therefore only subject to the law because it fell within "retailer engaged in business in this state" as defined in § 6203 (a).

322 U. S. 335 (1944), and in cases of maintenance in the State of local retail store outlets by out-of-state mail-order sellers. *Nelson* v. *Sears, Roebuck & Co., supra; Nelson* v. *Montgomery Ward,* 312 U. S. 373 (1941). In *Scripto, Inc.* v. *Carson,* 362 U. S. 207 (1960), the necessary basis was found in the case of a Georgia-based company that had "10 whole-salers, jobbers, or 'salesmen' conducting continuous local solicitation in Florida and forwarding the resulting orders from that State to Atlanta for shipment of the ordered goods," *id.,* at 211, although maintaining no office or place of business in Florida, and having no property or regular full-time employees there.

*Standard Pressed Steel Co.* v. *Washington Rev. Dept.,* 419 U. S. 560 (1975), is also instructive. That case involved a direct tax upon the gross receipts of a foreign corporation resulting from sales to a State of Washington customer, and not imposition of use-tax-collection duties. Although "a vice in a tax on gross receipts of a corporation doing an interstate business is the risk of multiple taxation . . . ," *id.,* at 563, see *Monamotor Oil Co.* v. *Johnson, supra,* a concern not present when only imposition of use-tax-collection duty is involved, *Standard Pressed Steel* held that maintenance in the taxing State of a single employee, an engineer whose office was in his Washington home and whose primary responsibility was to consult with the Washington-based customer regarding its anticipated needs for the out-of-state supplier's product, established a sufficient relation to activities within the State producing the gross receipts as to support imposition of the tax. It is particularly significant for our purposes in this case that the Court characterized as "frivolous" the argument that the seller's in-state activities were so thin and inconsequential that the tax had no reasonable relation to the protection and benefits conferred by the taxing State, for the employee "made possible the realization and continuance of valuable contractual relations between [the seller and its Washington cus-

tomer]." 419 U. S., at 562. Other fairly apportioned, non-discriminatory direct taxes have also been sustained when the taxes have been shown to be fairly related to the services provided the out-of-state seller by the taxing State. *Complete Auto Transit, Inc.* v. *Brady, ante,* p. 274; *General Motors Corp.* v. *Washington,* 377 U. S. 436 (1964); *Northwestern Cement Co.* v. *Minnesota,* 358 U. S. 450 (1959); *Memphis Gas Co.* v. *Stone,* 335 U. S. 80 (1948); *Wisconsin* v. *J. C. Penney Co.,* 311 U. S. 435, 444 (1940).

The case for the validity of the imposition upon the out-of-state seller enjoying such services of a duty to collect a use tax is even stronger. See *Norton Co.* v. *Illinois Rev. Dept.,* 340 U. S. 534, 537 (1951). The out-of-state seller runs no risk of double taxation. The consumer's identification as a resident of the taxing State is self-evident. The out-of-state seller becomes liable for the tax only by failing or refusing to collect the tax from that resident consumer. Thus, the sole burden imposed upon the out-of-state seller by statutes like §§ 6203 and 6204 is the administrative one of collecting it. Compare *McLeod* v. *Dilworth Co.,* 322 U. S. 327 (1944) (sales tax), with *Scripto, Inc.* v. *Carson, supra,* and *General Trading Co.* v. *Tax Comm'n, supra.* See also *American Oil Co.* v. *Neill,* 380 U. S. 451, 454–455 (1965).

Two decisions that have held fact patterns deficient to establish the necessary nexus to impose the duty to collect the use tax highlight the significance of the inquiry whether the out-of-state seller enjoys services of the taxing State. *Miller Bros. Co.* v. *Maryland,* 347 U. S. 340 (1954), struck down a Maryland assessment against a Delaware store near the border between the two States. The store had made over-the-counter sales to Maryland residents and occasionally shipped or delivered goods by truck into that State. The store advertised in Delaware by newspaper and radio, and some of these advertisements reached Maryland residents. These advertisements were sometimes supplemented with

"flyers" mailed to customers, some of whom lived in Maryland. The Court concluded that Maryland could not satisfy the due process requirement. In addition to the almost total lack of contacts between Maryland and the Delaware store— Marylanders went to Delaware to make purchases, the seller did not go to Maryland to make sales—the seller obviously could not know whether the goods sold over the counter in Delaware were transported to Maryland prior to their use. See *Scripto, Inc.* v. *Carson, supra,* at 212.

*National Bellas Hess, Inc.* v. *Illinois Rev. Dept.,* 386 U. S. 753 (1967), presented the question in the case of an out-of-state seller whose only connection with customers in the taxing State was by common carrier or mail. Illinois subjected appellant Bellas Hess, a national mail-order house centered in Missouri, to use tax liability based upon mail-order sales to customers in that State. Bellas Hess owned no tangible property in Illinois, had no sales outlets, representatives, telephone listings, or solicitors in that State, and did not advertise there by radio, television, billboards, or newspapers. It communicated with potential customers by mailing catalogues throughout the United States, including Illinois, twice a year and occasionally supplemented this effort by mailing out "flyers." All orders for merchandise were mailed to Bellas Hess' Missouri plant, and the goods were sent to customers by mail or common carrier. *Bellas Hess* held that, constitutionally, the basis for the requisite nexus was not to be found solely in Bellas Hess' mail-order activities in the State. The Court's opinion carefully underscored, however, the "sharp distinction . . . between mail order sellers with retail outlets, solicitors, or property within [the taxing] State, and those [like Bellas Hess] who do no more than communicate with customers in the State by mail or common carrier as part of a general interstate business." *Id.,* at 758. Appellant Society clearly falls into the former category.

## II

The Society argues, however, that its contacts with customers in California were related solely to its mail-order sales by means of common carrier or the mail, that the two offices played no part in that activity, and that therefore this case is controlled by *Bellas Hess*.[6] The Society argues in other words that there must exist a nexus or relationship not only between the seller and the taxing State, but also between the activity of the seller sought to be taxed and the seller's activity within the State. We disagree. However fatal to a direct tax a "showing that particular transactions are dissociated from the local business . . . ," *Norton Co.* v. *Illinois Rev. Dept., supra,* at 537; *American Oil Co.* v. *Neill, supra; Connecticut Gen. Life Ins. Co.* v. *Johnson,* 303 U. S. 77 (1938), such dissociation does not bar the imposition of the use-tax-collection duty.[7] It is true that *Sears, Roebuck* and *Montgomery Ward,* relied on by appellant, involved fact patterns that included proof of assistance by local operations of the mail-order business. Sears maintained 12 retail stores in the taxing State and was qualified to do business there. Sears' agents in the States, although not directly involved in the solicitation of the mail-order sales, at times assisted in processing such orders. The holding that Sears could not avoid use-tax liability did not, however, turn on that fact. The holding, rather, was that the fact Sears' business was departmentalized—the mail-order and retail stores operations were separately administered—did not preclude the finding of sufficient nexus. *Montgomery Ward,* a companion case to *Sears,*

---

[6] Appellant conceded at oral argument that *Bellas Hess* would have required reversal in the absence of the proof of maintenance of the two offices. Tr. of Oral Arg. 29, 34–35.

[7] Contrary to appellant's argument, Brief for Appellant 6, the fact that it has not registered to do business in California is not determinative against the validity of the application of §§ 6203 and 6204. See *General Trading Co.* v. *Tax Comm'n,* 322 U. S. 335 (1944); *Felt & Tarrant Co.* v. *Gallagher,* 306 U. S. 62 (1939).

*Roebuck,* presented a somewhat similar fact pattern. There the local retail stores engaged in local advertising of the mail-order merchandise. But here again we disagree that this fact was crucial to the Court's decision. Even if, as the Society argues, the fact patterns of *Sears* and *Montgomery Ward* may be regarded as the equivalent of the in-state solicitation by local agents found sufficient to supply the nexus for imposition of the use-tax-collection duty in *Felt & Tarrant Co.* v. *Gallagher,* 306 U. S. 62 (1939), see also *Scripto, Inc.* v. *Carson,* 362 U. S. 207 (1960) (local solicitation by commission "salesmen"); *General Trading Co.* v. *Tax Comm'n,* 322 U. S. 335 (1944) (traveling salesmen sent into taxing State); *Bowman* v. *Continental Oil Co.,* 256 U. S. 642 (1921) (local distributor and dealer); and *Monamotor Oil Co.* v. *Johnson,* 292 U. S. 86 (1934) (local refining, storage, and distributing facilities), the relevant constitutional test to establish the requisite nexus for requiring an out-of-state seller to collect and pay the use tax is not whether the duty to collect the use tax relates to the seller's activities carried on within the State, but simply whether the facts demonstrate "some definite link, some minimum connection, between [the State and] the *person* . . . it seeks to tax." *Miller Bros.* v. *Maryland,* 347 U. S., at 344–345. (Emphasis added.) Here the Society's two offices, without regard to the nature of their activities, had the advantage of the same municipal services—fire and police protection, and the like—as they would have had if their activities, as in *Sears* and *Montgomery Ward,* included assistance to the mail-order operations that generated the use taxes.

The Society's reliance on *Miller Bros. Co.* v. *Maryland, supra,* is also misplaced. The sales with respect to which Maryland sought to impose upon Miller the duty to collect its tax were of goods sold to residents of Maryland at Miller's Delaware store, although Miller made occasional deliveries in Maryland. Moreover, the lack of certainty that the merchandise sold over the counter to Maryland customers in

Delaware was transported to Maryland prior to its use militated against a finding of adequate nexus with respect to those purchases. *Scripto, Inc.* v. *Carson, supra,* at 212–213. The relational defect between the taxing State and the person or property sought to be taxed therefore obviated any relevance of a relationship between the State and the out-of-state retailer.

We conclude that the Society's continuous presence in California in offices that solicit advertising for its magazine provides a sufficient nexus to justify that State's imposition upon the Society of the duty to act as collector of the use tax.

*Affirmed.*

THE CHIEF JUSTICE and MR. JUSTICE REHNQUIST took no part in the consideration or decision of this case.

MR. JUSTICE BLACKMUN, concurring in the result.

I am not at all convinced that the Court's facile distinction of *Miller Bros. Co.* v. *Maryland,* 347 U. S. 340 (1954), on the ground that in that case "the seller obviously could not know whether the goods sold over the counter in Delaware were transported to Maryland prior to their use," *ante,* at 559, and that there was a "lack of certainty that the merchandise sold over the counter to Maryland customers in Delaware was transported to Maryland prior to its use," *ante,* at 561 and this page, is a proper and acceptable distinction. I thought that one of the factual difficulties of *Miller,* in the focus of the present case, was the Delaware seller's own *delivery* of goods to Maryland, some by common carrier and some by the seller's own truck. 347 U. S., at 341–342. Indeed, Miller Bros. stipulated that during the taxable period, it delivered or paid a common carrier to deliver $9,500 worth of merchandise to customers in Maryland ($8,000 through use of its truck, $1,500 by common carrier). *Id.,* at 350–351, n. 5. Miller Bros. exhibited no uncertainty as to the destination of those goods.

The Court appears to find an additional distinction in the fact that the goods in *Miller Bros.* were "sold to residents of Maryland at Miller's Delaware store," *ante,* at 561. If the Court intends thereby to rest a distinction on the fact that the sales were made out of State, I am at a loss to follow its reasoning. By definition, a use tax is imposed only on sales made out of State. In short, *Miller Bros.* is not so easily explained away.

Thus, it seems to me, we have another instance where this Court's past decisions in the tax area are not fully consistent. See *Complete Auto Transit, Inc.* v. *Brady, ante,* p. 274, and its development from its immediate predecessor, *Colonial Pipeline Co.* v. *Traigle,* 421 U. S. 100, 101 (1975).

In any event, I find myself in accord with the Court's result in the present case. If, as I suspect, the result today is not fully consistent with the result in *Miller,* I am content to let *Miller* go.