**SHELL OIL COMPANY, Appellant,**

v.

**G.D. BAIR, Director, Department of
Revenue, Appellee.**

**SHELL OIL COMPANY, Appellee,**

v.

**G.D. BAIR, Director, Department of
Revenue, Appellant.**

**Nos. 86–1731, 86–1747.**

Supreme Court of Iowa.

Dec. 23, 1987.

William D. Peltz and Jeffrey W. Blinn of Shell Oil Co., Houston, Tex., and James W. Hall of Hall & Irvine, Cedar Rapids, for Shell Oil Co.

Thomas J. Miller, Atty. Gen., Harry M. Griger, Sp. Asst. Atty. Gen., and Marcia Mason, Asst. Atty. Gen., for G.D. Bair, Director, Dept. of Revenue.

CARTER, Justice.

In consolidated appeals, Shell Oil Company (Shell) appeals a district court order upholding the constitutionality of an Iowa statute denying deductibility of certain federal excise taxes in computing Iowa corporation income tax liability; the Iowa Department of Revenue (IDOR) appeals a companion decision limiting the application of that statute. Both appeals involve the effect of a statute currently codified as Iowa Code section 422.35(10) (1987) which generally provides that, if deducted on the taxpayer's federal income tax return, a federal excise tax imposed on oil producers must be added to the net income shown on the federal return in order to arrive at Iowa net income subject to tax. The effect of this statute is to deny the taxpayer a deduction for Iowa corporation income tax purposes which may be taken for federal income tax purposes.

In the district court, Shell challenged the constitutionality of section 422.35(10) on several grounds in No. 86–1731 and, in No. 86–1747, sought to limit the application of that statute based on statutory interpretation arguments. Although unsuccessful in its constitutional challenge, Shell was at least partially successful in its statutory interpretation claims. For reasons which we discuss, the district court's decision is affirmed on Shell's appeal and affirmed, as modified, on IDOR's appeal.

## I. *The Statutory Interpretation Issue (IDOR's Appeal).*

We first consider IDOR's appeal challenging the district court's interpretation of 1982 Iowa Acts chapter 1206, section 1, currently codified as Iowa Code section 422.35(10) (1987). That statute reads in context as follows:

> The term "net income" means a taxable income before the net operating loss deduction, as properly computed for federal income tax purposes under the Internal Revenue Code of 1954, with the following adjustments:
>
> > [Subtraction of interest and dividends on federal securities and other items exempt from state taxation]
> >
> > [Addition of deductions taken on the federal return which are not deductible under state law including the following:]
> >
> > . . . .

(10) ... the amount of windfall profits tax deducted under section 164(a) of the Internal Revenue Code of 1954.

In a petition filed pursuant to Iowa Code section 17A.9 (1983), Shell requested a declaratory ruling from IDOR that the "add back" provision contained in section 422.-35(10) is limited to those situations where an oil producer relied specifically on section 164(a) of the Internal Revenue Code of 1954 as the basis for deducting its federal windfall profits tax liability for federal income tax purposes.[1]

Under the interpretation proposed by Shell and adopted by the district court, section 422.35(10) is not applicable if a taxpayer excludes the federal windfall profits tax from gross income on its federal return as an ordinary and necessary business expense deductible under section 162(a) of the Internal Revenue Code of 1954, or as part of the taxpayer's cost of goods sold subtracted from gross receipts in order to obtain gross profit.[2]

The formal ruling issued by IDOR in response to the petition for declaratory relief stated, in part, as follows:

[I]t is clear that whether the WPT constitutes a deduction for Iowa income tax purposes is a matter of legislative grace and depends upon legislative intent to allow or disallow it as a deduction. Even if a federal tax is paid by a taxpayer from its profits or otherwise constitutes an expense of doing business, for state income tax purposes, such federal tax is not per se deductible unless authorized by statute. To say that, in light of [section 422.35(10)], the WPT is still deductible by [Shell] as a cost of goods sold or a business expense, would result in

rendering [the statute] meaningless.... To the extent it is deductible on [Shell's] federal income tax return for tax years 1981 and thereafter, it must be added back upon its Iowa income tax returns for the same tax periods. Such was the clear and obvious intention of the legislature.

After hearing Shell's petition for judicial review under section 17A.19, the district court reversed IDOR's declaratory ruling and concluded as follows:

[IDOR] argues that [section 422.-35(10)] is ambiguous. It argues that the legislature may have intended to describe the windfall profits tax as an item that must not be considered anywhere in computing Iowa taxable income, regardless of under what section of the Internal Revenue Code the WPT was deducted. The statute, however, contains no such ambiguity. It does not refer to what *could* be deducted under section 164(a) but in effect what *has been* deducted under section 164(a). The statute is specific in defining which or what portion of the windfall profits tax must be added back. It is that amount deducted under "section 164(a) of the Internal Revenue Code of 1954."

Applying basic rules of construction the court concludes that only WPT deducted under section 164(a) of the Internal Revenue Code of 1954 need be added back under the plain language of [the statute].

In seeking to overturn the district court's decision, IDOR argues in this court that application of [422.35(10)] should not depend upon either taxpayer treatment of WPT in the taxpayer's financial reports

---

**1.** In addition to requesting a ruling that application of the "add back" provision is limited, Shell requested IDOR to rule that the proposed inconsistency in application is so great as to void the "add back" provision in its entirety. We reject this contention out of hand and will only discuss Shell's claim that the "add back" provision is of *limited* application.

**2.** Shell schedules cost of goods sold, as shown on line 2 of federal form 1120, in the following manner:

Inventory at Beginning of Year
 less
 merchandise bought for manufacture or sale
 salaries and wages
 <u>other cost</u>
 Total
 less
 <u>inventory at end of year</u>
 Cost of Goods Sold

Under the hypothetical situation proposed by Shell in its petition for declaratory ruling, the windfall profits tax would be included as "other costs" on this schedule.

or taxpayer reliance upon § 164(a)(5) as authority to treat WPT on the federal level. Such application causes inequitable and disparate taxation and frustrates the purpose of the Iowa income tax law. By contrast, [IDOR's] interpretation ... treats all corporate WPT taxpayers alike, regardless of how those taxpayers treat the WPT in their financial reports and regardless of whether those taxpayers rely upon IRC §§ 471, 164, or 162 as authority to recognize their WPT for federal income tax purposes.

We agree with this argument as to certain issues in the case and not as to others.

It should be explicitly stated that in our determination of these issues we make no effort to determine whether Shell is correct in asserting that it may elect, on its federal return, to deduct the federal windfall profits tax liability as an ordinary and necessary business expense instead of a deductible tax. Nor do we determine whether it may elect, under federal law, to schedule the windfall profits tax liability as part of its cost of goods sold.[3] We assume, as did IDOR in the requested ruling, that those elections are available under federal law.

In seeking to overturn the district court's decision, IDOR argues that it should make no difference in the application of section 422.35(10) whether the amount of windfall profits tax liability deducted on an oil producer's federal return is shown as "taxes" on line 17 of federal form 1120 or as scheduled business expenses on line 20. In either instance, it is an amount claimed as a deduction from total income in order to arrive at federal taxable income. Because the point of beginning for reporting income on the Iowa corporation return is "net income per federal return,"[4] this would result in a deduction of the federal windfall profits tax for Iowa income tax purposes were it not for the "add back" feature of section 422.35(10).

A court construing a statute to ascertain legislative intent must not only consider the language used, but must also take account of the object sought to be accomplished and the problems sought to be remedied and arrive at a construction that will best effect its purpose. *Kelly–Springfield Tire Co. v. Iowa State Bd. of Tax Review*, 414 N.W.2d 113, 115 (Iowa 1987); *In re Girdler*, 357 N.W.2d 595, 597 (Iowa 1984); *Lau v. City of Oelwein*, 336 N.W.2d 202, 203 (Iowa 1983). If the legislation under consideration is viewed in this light, its obvious intent is to deny a deduction for an oil producer's federal windfall profits tax liability in computing its Iowa net income subject to tax. Congress dealt specifically with federal deductibility of that tax in section 164(a) of the Internal Revenue Code of 1954, and, as a logical consequence of that fact, our legislature identified this item of nondeductible expense by referring to that statute. In establishing the nondeductibility of this item, the legislature was not concerned with which line of the federal return the deduction has been listed.

We conclude that where payment (or where permitted accrual) of the federal windfall profits tax has been taken by an oil producer as a deduction in arriving at net income on its federal return, it must be added back as an appropriate "other addition" in computing Iowa corporation income tax liability. The declaratory ruling issued by IDOR was correct on this issue. To the extent that the district court's decision is inconsistent with this conclusion, it is modified.

The declaratory ruling also dealt with the hypothetical inclusion of the windfall profits tax as an inventoriable cost. For purposes of applying section 422.35(10), we find this situation to be quite different from the issue previously discussed. The tax reporting consequences of an inventoriable cost are clearly not the same as those which arise from an allowable deduction. Deductions, where allowable, match ex-

---

**3.** See n. 2, *supra*.

**4.** This is a figure required to be shown on line 1 of Iowa form 1120. This is consistent with the first unnumbered paragraph of Iowa Code § 422.35 (1983). *See First Nat'l Bank of Ottumwa v. Bair*, 252 N.W.2d 723, 725 (Iowa 1977).

penses paid (or where permitted accrued) during a particular taxable year with income attributable to that year. In contrast, the tax benefit derived from scheduling expenses as inventoriable costs may not be determined until the year in which the particular product is sold.

 In the present case, if the petroleum products on which the windfall profits taxes were imposed remained in the oil producer's inventory, there may be no beneficial tax consequence to the producer in the same taxable year. It would require more than a modest amount of judicial legislation to extend the limitation described in section 422.35(10) to the area of inventoriable costs. We therefore conclude that if the inventory expense route is utilized in lieu of a deduction from gross income nothing has occurred which triggers the application of section 422.35(10). On this issue, the district court's decision is in accord with our conclusions and is affirmed.

Because we read Shell's argument as suggesting otherwise,[5] we hasten to add that an oil producer must have in fact claimed the amount of the windfall profits tax as an inventory cost for federal tax purposes and not taken that expense as a deduction in order to avoid the consequences of section 422.35(10). It is not sufficient to show that it could have taken that approach in preparation of the federal return.

## II. *The Constitutional Issues (Shell's Appeal).*

In No. 86–1731, Shell commenced an original action in the district court challenging the constitutionality of section 422.-35(10) on several grounds. The district court rejected all of its contentions. We consider both the procedural and substantive issues which are presented.

 A. *Exhaustion of Administrative Remedies.* Although not addressed by the parties, we find it necessary to consider the question of exhaustion of administrative remedies as that doctrine affects Shell's right to maintain its original action. We

have previously held that, where issues decided by an administrative agency involve potential constitutional questions, these constitutional issues must first be raised before the agency in order to be considered by a court in reviewing the final agency action under Iowa Code section 17A.19. *Chauffeurs, Teamsters & Helpers Local Union No. 238 v. Iowa Civil Rights Comm'n,* 394 N.W.2d 375, 382 (Iowa 1986); *Chicago & N. Transp. Co. v. Iowa Transp. Regulation Bd.,* 322 N.W.2d 273, 276 (Iowa 1982). This case presents a different issue, *i.e.,* whether, in challenging the constitutionality of a statute affecting agency action, proceedings before the affected agency may be bypassed entirely by bringing an original action in the district court. We believe that, where the constitutional issue sought to be raised directly affects a matter pending before an agency, administrative exhaustion should ordinarily precede a judicial inquiry into the statute's validity.

The issue is addressed in K. Davis, *Administrative Law* § 20.04, at 74–81 (1958). There, the author states:

A fundamental distinction must be recognized between constitutional applicability of legislation to particular facts and constitutionality of the legislation. When a tribunal passes upon constitutional applicability, it is carrying out the legislative intent, either express or implied or presumed. When a tribunal passes upon constitutionality of the legislation, the question is whether it shall take action which runs counter to the legislative intent. We commit to administrative agencies the power to determine constitutional applicability, but we do not commit to administrative agencies the power to determine constitutionality of legislation. Only the courts have authority to take action which runs counter to the expressed will of the legislative body.

Should one who seeks to challenge the constitutionality of legislation be required to exhaust remedies before an administrative agency which has no authority to pass upon the constitutional issues the plaintiff wants to raise?

---

5. See n. 1, *supra.*

*Id.* at 74 (footnotes omitted). Notwithstanding the agency's lack of authority to make constitutional determinations, the authorities suggest that, unless the matter is entirely anticipatory, the case or controversy utilized for purposes of challenging the constitutionality of the statute should be initiated before the affected agency. *Aircraft & Diesel Equipment Corp. v. Hirsch,* 331 U.S. 752, 67 S.Ct. 1493, 91 L.Ed. 1796 (1947); *A Quaker Action Group v. Morton,* 460 F.2d 854 (D.C.Cir.1971).

In *Aircraft & Diesel Equipment Corp.,* the Court's principal reason for taking this position was that permitting the administrative process to first run its course may eliminate the need for reaching potential constitutional claims. We agree with this reasoning and add yet another reason for imposing the exhaustion requirement. Even facial constitutional issues are more effectively presented for adjudication based upon a specific factual record. The place for such record to be developed is, we believe, before the agency entrusted with the determination of the adjudicative facts. *See, e.g., A Quaker Action Group,* 460 F.2d at 862. Moreover, it can be expected that facial constitutional challenges will be coupled with claims that the legislation is unconstitutional as applied to the litigant. Efficient and effective judicial administration is therefore better served by having the entire proceeding first determined by the agency.

■ Shell is rescued from the adverse consequences which would otherwise flow from the exhaustion requirement by reason of the language of Iowa Code section 17A.19(1), which provides, "[i]f the agency declines to issue ... a declaratory ruling after receipt of a petition therefor, any administrative remedy available under section 17A.9 shall be deemed inadequate or exhausted." Although no formal petition invoking a facial constitutional challenge to section 422.35(10) was filed with the agency in the present case, it appears that in considering the effect of that statute on Shell's Iowa income tax liability IDOR advised Shell in connection with the issues raised in the companion case processed under chapter 17A that it declined to determine the facial constitutional question. The agency acquiesced in the filing of an original declaratory judgment action in the district court for purposes of resolving that question. We deem this to be a sufficient declination to rule on the issue for purposes of satisfying the quoted exhaustion waiver language in section 17A.19(1).

**B. *The Merits of Shell's Constitutional Challenge.*** Shell asserts that on its face section 422.35(10) violates the equal protection clause, due process clause, and commerce clause of the federal constitution. The basic premise upon which these constitutional claims are postulated is that by applying that statute to Shell the state of Iowa is taxing a measure of value which is not income. In seeking to advance that theory, Shell claims that the taxable incident involved is the severance of crude oil by Shell in another jurisdiction or the added value outside of Iowa by which the windfall profits tax is measured. We reject these claims because we disagree with the premise on which they are based.

■ For reasons which we recently discussed in *Kelly–Springfield Tire Co.,* 414 N.W.2d at 116–19, we believe the measure of Shell's liability for the Iowa corporation income tax depends on "the nexus of Shell's activities within this state." That nexus is measured by an apportionment formula wherein "the part [of Shell's income] attributable to business within the state shall be in that proportion which the gross sales made within the state bear to total gross sales." Iowa Code § 422.33(2)(b)(4). The tax imposed is based on apportioned gross revenues. The extent to which those revenues may be reduced for tax purposes by allowable deductions is a matter of legislative grace.

■ The amount of income upon which a tax is imposed may constitutionally be income prior to payment of certain expenses. As observed in *State ex rel. Stern Milling Co. v. Wisconsin Tax Commission,* 170 Wis. 506, 175 N.W. 931 (1920):

The ultimate object to be attained is not to fix the real net income, which is left for the use and enjoyment of the produc-

er thereof, but to arrive at a basis upon which a tax measured by his ability to pay is to be computed.

*Id.* at 510, 175 N.W. at 932. Shell has cited no authority nor advanced any principled argument which indicates that the aggregate sum which remains subject to tax, absent deduction of its windfall profits tax liability, is an invalid measure of its Iowa income tax liability under either the due process or commerce clauses. Cases which tend to refute that contention include *Moorman Manufacturing Co. v. Bair,* 437 U.S. 267, 98 S.Ct. 2340, 57 L.Ed.2d 197 (1978), and *Standard Pressed Steel Co. v. Washington Revenue Department,* 419 U.S. 560, 95 S.Ct. 706, 42 L.Ed.2d 719 (1975).

In sustaining Iowa's apportioned gross sales formula under the federal due process clause, the Court in *Moorman Manufacturing Co.* observed that "it is evident that appellant [taxpayer] would have no basis for complaint if ... Iowa had imposed a more burdensome gross receipts tax on the gross receipts from sales to Iowa customers." 437 U.S. at 280, 98 S.Ct. at 2348, 57 L.Ed.2d at 209. The more burdensome gross receipts tax to which the Court refers was sustained under both the due process and commerce clauses in *Standard Pressed Steel Co.* Given the Court's deference to taxes measured by "gross revenues," we find no merit in Shell's claims that a state tax deduction for a particular federal excise tax is constitutionally mandated.

■ We also reject Shell's argument that section 422.35(10) violates the federal equal protection clause because it singles out corporations that are producer-marketers for discriminatory treatment. To the extent this occurs it is because nonproducer-marketers, as separate taxpaying entities, have incurred no federal excess profits tax liability which can be taken as a deduction on their federal returns. This lack of similarity precludes a basis for comparison suffi-

cient to launch Shell's equal protection claim.[6]

■ We also reject Shell's argument that the legislative history of 26 U.S.C. section 4986 and 31 U.S.C. section 555 indicates that Congress required the states to permit local deductibility of this federal tax in the imposition of state income taxes. Our reading of the relevant committee reports suggests that the legislative history upon which Shell relies has reference to projected economic impact based upon existing state taxation laws at the time the federal excess profits tax was imposed on oil producers. *See* S.Rep. No. 394, 96th Cong., 2d Sess. 9 (1979), reproduced in 1980 U.S.Code Cong. & Adm.News, 410, 419; H.Rep. No. 304, 96th Cong., 2d Sess. 9 (1979), reproduced in 1980 U.S.Code Cong. & Adm. News, 587, 595. This legislative history falls far short of supporting a Congressional intent to prohibit the states from thereafter changing their laws so as to deny deductibility of this federal tax.

■ Finally, we consider Shell's argument that the challenged statute is unconstitutionally retroactive. It is well established that under some circumstances it is necessary to act retroactively in seeking a fair apportionment of the cost of government. A leading case on point states:

Taxation is neither a penalty imposed on the taxpayer nor a liability which he assumes by contract. It is but a way of apportioning the cost of government among those who in some measure are privileged to enjoy its benefits and must bear its burdens. Since no citizen enjoys immunity from that burden, its retroactive imposition does not necessarily infringe due process.

*Welch v. Henry,* 305 U.S. 134, 146–47, 59 S.Ct. 121, 125, 83 L.Ed. 87, 93 (1938). We have previously held that tax laws may be retroactively applied to affect receipt of income during the year of the legislative session preceding that of its enactment. *City Nat'l Bank of Clinton v. Iowa State*

6. This same type of dissimilarity also serves to defeat Shell's claim that the challenged statute discriminates against interstate commerce because local distributors are not subject to its provisions. As Shell concedes, none of the local distributors are producers and therefore are not subject to a windfall profits tax liability.

432

*Tax Comm'n,* 251 Iowa 603, 607, 102 N.W. 2d 381, 384 (1960). The challenged statute did not impose a completely new tax. It simply added a provision to our taxing laws which disallowed a deduction for an expense which had not previously existed. There was no settled or reasonable expectation on Shell's part that this deduction would be allowed.

We have considered all issues and challenges presented in these consolidated appeals whether or not each is specifically referred to in our opinion. The decision of the district court in No. 86–1731 is affirmed and its decision in No. 86–1747 is affirmed as modified.

(NO. 86–1731) AFFIRMED; (NO. 86–1747) AFFIRMED AS MODIFIED.

All Justices concur except SNELL and ANDREASEN, JJ., who take no part.