38 A.3d 604

TELEBRIGHT CORPORATION, INC., PLAINTIFF–APPELLANT,
v. DIRECTOR, NEW JERSEY DIVISION OF TAXATION,
DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted December 6, 2011—Decided March 2, 2012.

 

Before Judges REISNER, SIMONELLI and HAYDEN.

*Richard J. Bove* (*Bove & Associates*), attorney for appellant.

*Paula T. Dow*, Attorney General, attorney for respondent (*Lewis A. Scheindlin*, Assistant Attorney General, of counsel; *Marikae G. Toye*, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

REISNER, J.A.D.

In a published opinion, *Telebright v. Director, Division of Taxation*, 25 *N.J.Tax* 333 (Tax 2010), the Tax Court held as follows: a foreign corporation that regularly and consistently permits one of its employees to telecommute full-time from her New Jersey residence is doing business in New Jersey, is subject to the New Jersey Corporation Business Tax Act (CBT Act), *N.J.S.A.* 54:10A–1 to –41, and must file New Jersey Corporation Business Tax returns. We affirm, substantially for the reasons set forth in Judge DeAlmeida's opinion. We add the following discussion.

I

The facts, derived from the parties' summary judgment motions, are undisputed. Telebright Corp., Inc. (Telebright or the company) is incorporated in Delaware and has its offices in Maryland. The employee in question [1] develops and writes software code from a laptop computer in New Jersey. The work she produces becomes an integral part of the "ManageRight" web application, a product that Telebright provides to its customers.[2] As described in her deposition, instead of making physical objects for the company to sell, she creates intellectual property that will become part of the web application the company's customers will pay to use. She programs computer code to be added to a "chunk" of the company's software. When she finishes a project, instead of postal-mailing it to the company headquarters, she uploads it to a "repository" on the company's computer server. Once in the

---

[1] The employee's name is irrelevant to our decision and, mindful that this opinion will be posted on the internet, we have omitted it.

[2] As she described it, Telebright "has [a] ManageRight application which they sell to clients. So we have our own production environment where the clients can use our web production application to do their work." The employee explained, for example, that using the ManageRight program, a client company can keep track of its employees' company-issued cell phones, pay the phone bills, track the expenses and the calls made, and order replacement phones.

repository, her work becomes accessible to her co-employees, who "deploy" it to the company's web application.

The employee began working for Telebright in Maryland in 2001, but in 2004 her husband obtained employment in New Jersey and the couple moved here. To retain the employee's services, Telebright allowed her to telecommute full-time from New Jersey and initially provided her with a laptop computer for that purpose. She later replaced that computer using her own funds. Since 2004, when the employee began telecommuting, Telebright has withheld New Jersey income tax from her salary and remitted it to the New Jersey Division of Taxation. She submits her timesheets by computer from New Jersey.

The employee is supervised by and reports to a project manager, who telecommutes full-time from Boston. She communicates with the manager by email and telephone calls, and she occasionally participates in conference calls with company clients. She attends company-wide meetings in Maryland once or twice a year but otherwise works entirely from her home in New Jersey.

When the employee began working for Telebright, she signed an employment contract that restricts her future employment elsewhere and prohibits her from disclosing the company's proprietary information. While the contract requires arbitration of disputes, it permits the company to seek injunctive relief if the employee violates those provisions.

II

The CBT Act requires every foreign corporation that is not exempt to pay an annual franchise tax "for the privilege of having or exercising its corporate franchise in this State, or ... for the privilege of doing business, employing or owning capital or property, or maintaining an office, in this State." *N.J.S.A.* 54:10A–2.[3]

---

[3] The State contends that the tax actually imposed may be as little as the statutory minimum of $500. *See N.J.S.A.* 54:10A–5(e).

The Legislature has declared the reach of the statute to be co-extensive with the State's constitutional power to tax.

A taxpayer's exercise of its franchise in this State is subject to taxation in this State if the taxpayer's business activity in this State is sufficient to give this State jurisdiction to impose the tax under the Constitution and statutes of the United States.

[*N.J.S.A.* 54:10A–2.]

The statute is to be construed broadly in light of that purpose. *See Roadway Express, Inc. v. Dir., Div. of Taxation,* 50 *N.J.* 471, 483, 236 *A.*2d 577 (1967), *app. dis.,* 390 *U.S.* 745, 88 *S.Ct.* 1443, 20 *L.Ed.*2d 276 (1968).[4]

The Division of Taxation's regulations define "doing business" comprehensively as "all activities which occupy the time or labor of men for profit." *N.J.A.C.* 18:7–1.9(a). Any for-profit corporation "carrying out any of the purposes of its organization within the State shall be deemed to be 'doing business.'" *N.J.A.C.* 18:7–1.9(a)1. The regulation lists five non-exclusive factors to be considered in determining whether a corporation is "doing business" here:

1. The nature and extent of the activities of the corporation in New Jersey;
2. The location of its offices and other places of business;
3. The continuity, frequency and regularity of the activities of the corporation in New Jersey;
4. The employment in New Jersey of agents, officers and employees;
5. The location of the actual seat of management or control of the corporation.

[*N.J.A.C.* 18:7–1.9(b).]

 We agree with Judge DeAlmeida that Telebright is doing business in New Jersey. We add only that Telebright's full-time New Jersey employee "carr[ies] out the purpose of its organization" here, by creating computer code that becomes part of Telebright's web-based service.[5] *See N.J.A.C.* 18:7–1.9(a)1. For

---

4 Prohibiting duplicative taxation, the CBT Act is "in lieu of all other State, county or local taxation upon or measured by intangible personal property used in business by corporations liable to taxation under this act." *N.J.S.A.* 54:10A–2.

5 The Tax Court has treated prewritten packaged software as "tangible copyrighted property." *AccuZIP, Inc. v. Dir., Div. of Taxation,* 25 *N.J.Tax* 158, 172

purposes of applying the CBT, that is no different than a foreign manufacturer employing someone to fabricate parts in New Jersey for a product that will be assembled elsewhere.

On this appeal, Telebright does not directly contest that its activities satisfy the statutory test for doing business. Rather, it argues that applying the CBT Act to its limited activities in New Jersey would violate the Commerce and Due Process Clauses of the United States Constitution. *U.S. Const.* art. I, § 8; amend. XIV, § 1; *see N.J.S.A.* 54:10A–2 (application of the CBT Act extends to the limits the Constitution will allow).

■■■ To some extent, the Due Process and Commerce Clause inquiries overlap:

> The Commerce Clause and the Due Process Clause impose distinct but parallel limitations on a State's power to tax out-of-state activities. The Due Process Clause demands that there exist " 'some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax,' " as well as a rational relationship between the tax and the " ' ' "values connected with the taxing State." ' " The Commerce Clause forbids the States to levy taxes that discriminate against interstate commerce or that burden it by subjecting activities to multiple or unfairly apportioned taxation. The "broad inquiry" subsumed in both constitutional requirements is " 'whether the taxing power exerted by the state bears fiscal relation to protection, opportunities and benefits given by the state' "—that is, " 'whether the state has given anything for which it can ask return.' "
>
> [*MeadWestvaco Corp. v. Ill. Dep't of Revenue*, 553 *U.S.* 16, 24–25, 128 *S.Ct.* 1498, 1505, 170 *L.Ed.*2d 404, 412 (2008) (internal citations omitted).]

■■■ As explained in *Quill Corporation v. North Dakota*, 504 *U.S.* 298, 306–08, 112 *S.Ct.* 1904, 1909–11, 119 *L.Ed.*2d 91, 102–04 (1992), the Due Process Clause is concerned with the fairness of exercising a state's authority over a business, that is, with whether the business should know, based on its activity within the state, that it can expect to be regulated by that state. The Commerce Clause, on the other hand, is concerned with preventing states from imposing undue burdens on interstate commerce.

---

(Tax 2009). For purposes of this opinion, it does not matter whether the component code Telebright's employee creates is "tangible" property or intangible intellectual property.

Due process centrally concerns the fundamental fairness of governmental activity. Thus, at the most general level, the due process nexus analysis requires that we ask whether an individual's connections with a State are substantial enough to legitimate the State's exercise of power over him. We have, therefore, often identified "notice" or "fair warning" as the analytic touchstone of due process nexus analysis. In contrast, the Commerce Clause and its nexus requirement are informed not so much by concerns about fairness for the individual defendant as by structural concerns about the effects of state regulation on the national economy. Under the Articles of Confederation, state taxes and duties hindered and suppressed interstate commerce; the Framers intended the Commerce Clause as a cure for these structural ills.

[*Id.* at 312, 112 *S.Ct.* at 1913, 119 *L.Ed.*2d at 106.]

■ Telebright first contends that upholding the tax in this case will allow a state to tax any corporation whose employees choose to reside in that state. That argument is frivolous. The State is not imposing the CBT tax because Telebright's employee lives in New Jersey; it is imposing the tax because she performs work for Telebright on a full-time basis in this State. Taxing a business based on its employing one full-time employee in the taxing state does not violate the Due Process Clause. *See Standard Pressed Steel Co. v. Dep't of Revenue,* 419 *U.S.* 560, 562, 95 *S.Ct.* 706, 708, 42 *L.Ed.*2d 719, 722 (1975) (the presence of one employee within the State of Washington was sufficient to subject the company to the state's business and occupation tax without violating due process); *Nat'l Geographic Soc. v. Calif. Bd. of Equalization,* 430 *U.S.* 551, 557, 97 *S.Ct.* 1386, 1390–91, 51 *L.Ed.*2d 631, 637–38 (1977) (confirming that *Standard Pressed Steel* remains good law).

■ The employee produces computer code for Telebright in New Jersey. She is entitled to all of the legal protections this State provides to its residents. *See Nat'l Geographic, supra,* 430 *U.S.* at 561, 97 *S.Ct.* at 1392–93, 51 *L.Ed.*2d at 640. And, should the employee violate the restrictive covenants in her employment contract, Telebright may file suit to enforce the contract in New Jersey's courts, provided it files a business activities report pursuant to *N.J.S.A.* 14A:13–15. *See N.J.S.A.* 14A:13–20. Telebright has sufficient "minimum connection" with this State to permit taxation consistent with the Due Process Clause. *MeadWestvaco Corp., supra,* 553 *U.S.* at 25, 128 *S.Ct.* at 1505–06, 170 *L.Ed.*2d at

412–13; *Int'l Shoe Co. v. Washington,* 326 *U.S.* 310, 319–20, 66 *S.Ct.* 154, 159–60, 90 *L.Ed.* 95, 103–04 (1945).

■ We next turn to Telebright's arguments based on the Commerce Clause. For purposes of the Commerce Clause, a state tax must satisfy the four-part test first set forth in *Complete Auto Transit, Inc. v. Brady,* 430 *U.S.* 274, 279, 97 *S.Ct.* 1076, 1079, 51 *L.Ed.*2d 326, 331 (1977):

> Under *Complete Auto's* four-part test, we will sustain a tax against a Commerce Clause challenge so long as the "tax [1] is applied to an activity with a substantial nexus with the taxing State, [2] is fairly apportioned, [3] does not discriminate against interstate commerce, and [4] is fairly related to the services provided by the State." 430 *U.S.* at 279, 97 *S.Ct.* at 1079.
>
> [*Quill, supra,* 504 *U.S.* at 311, 112 *S.Ct.* at 1912, 119 *L.Ed.*2d at 105.]

■ Apart from one sentence in the conclusion section, Telebright's brief does not contend that the CBT fails the second, third or fourth prongs of the test, and it presents no arguments in support of its contention.[6] Even taking the most indulgent view of its submission, we find Telebright has waived its right to challenge the tax on those bases. *See Sklodowsky v. Lushis,* 417 *N.J.Super.* 648, 657, 11 *A.*3d 420 (App.Div.2011).

Addressing the first prong, Telebright argues that employing one person in this State is de minimus and does not create the "definite link" or "minimum connection" between Telebright and

---

[6] "The relevant inquiry under the fourth prong of the *Complete Auto Transit* test is not ... the *amount* of the tax or the *value* of the benefits allegedly bestowed as measured by the costs the State incurs on account of the taxpayer's activities." *Commonwealth Edison Co. v. Montana,* 453 *U.S.* 609, 625–26, 101 *S.Ct.* 2946, 2957–58, 69 *L.Ed.*2d 884, 899–900 (1981). Instead, as with the first prong, under the fourth prong, "the interstate business must have a substantial nexus with the State before *any* tax may be levied on it." *Id.* at 626, 101 *S.Ct.* at 2958, 69 *L.Ed.*2d at 900. "Beyond that threshold requirement, ... the *measure* of the tax must be reasonably related to the extent of the contact, since it is the activities or presence of the taxpayer in the State that may properly be made to bear a 'just share of state tax burden.' " *Ibid.; see also Goldberg v. Sweet,* 488 *U.S.* 252, 266–67, 109 *S.Ct.* 582, 591–92, 102 *L.Ed.*2d 607, 620–21 (1989). To the extent Telebright's brief might be construed as arguing that the fourth prong is not satisfied because its in-state presence is de minimus, that argument is without merit, for the reasons discussed later in this opinion.

this State so as to justify imposition of the CBT. *MeadWestvaco, supra,* 553 *U.S.* at 24–25, 128 *S.Ct.* at 1504–05, 170 *L.Ed.*2d at 412; *Miller Bros. Co. v. Maryland,* 347 *U.S.* 340, 344–45, 74 *S.Ct.* 535, 538–39, 98 *L.Ed.* 744, 748 (1954). Relying on *National Bellas Hess, Inc. v. Department of Revenue,* 386 *U.S.* 753, 87 *S.Ct.* 1389, 18 *L.Ed.*2d 505 (1967), Telebright also contends that, given the prevalence of telecommuting, taxing businesses on the basis that their employees work from remote locations will impose "unjustifiable local entanglements" and an undue accounting burden on those businesses. *Bellas Hess* is not on point.

In that case, the State of Illinois imposed a use tax on National Bellas Hess, a foreign mail order business that had "neither outlets nor sales representatives" nor any other employees or property in Illinois. *Id.* at 753–54, 87 *S.Ct.* at 1389–90, 18 *L.Ed.*2d at 507. It mailed catalogues and merchandise to Illinois customers from an out-of-state location. The Court found that Illinois was providing no benefit to the foreign business that could justify imposing a tax. The Court also noted, that if a business could be taxed based solely on its use of the mails to solicit business and deliver goods, then conceivably every state and locality in the country could impose "sales and use taxes" on that business. The resulting "administrative and record-keeping requirements could entangle National's interstate business in a virtual welter of complicated obligations to local jurisdiction with no legitimate claim to impose 'a fair share of the cost of the local government.'" *Id.* at 759–60, 87 *S.Ct.* at 1393, 18 *L.Ed.*2d at 510 (citation omitted); *see also Quill, supra,* 504 *U.S.* at 313 n. 6, 112 *S.Ct.* at 1914, 119 *L.Ed.*2d at 107.

 This case is not analogous to *Bellas Hess,* because Telebright has an employee working full-time in New Jersey creating a portion of its product. In *Quill, supra,* the Court overruled *Bellas Hess* insofar as it held that the Due Process Clause required that a business have a physical presence in the taxing state. *Id.* at 306–08, 112 *S.Ct.* at 1910, 119 *L.Ed.*2d at 102–03. However, the Court re-affirmed that the Commerce Clause re-

quires a focus on the burdens placed on interstate commerce, and reaffirmed the *Bellas Hess* "bright-line" test prohibiting states from collecting sales and use taxes from vendors " 'whose only connection with customers in the [taxing] State is by common carrier or the United States mail.' " *Id.* at 315, 112 *S.Ct.* at 1914, 119 *L.Ed.*2d at 108 (internal citations omitted).[7] However, the Court also reaffirmed that the presence of "a small sales force, plant, or office" could subject a foreign business to taxation. *Ibid.; Nat'l Geographic, supra,* 430 *U.S.* at 557, 97 *S.Ct.* at 1386, 51 *L.Ed.*2d at 637; *Standard Pressed Steel, supra,* 419 *U.S.* at 562, 95 *S.Ct.* at 708, 42 *L.Ed.*2d at 722 (rejecting as "frivolous" the argument that having one employee in the state was de minimus and therefore defeated the state's right to impose a tax).

█ The fact that Telebright's full-time employee works from a home office rather than one owned by Telebright is immaterial for purposes of the first prong of the *Complete Auto* test. She is producing a portion of the company's web-based product here, and the company benefits from all of the protections New Jersey law affords this employee. Turning to the alleged regulatory burden on Telebright, it already withholds and pays New Jersey state income tax from her salary and is subject to, and must remain apprised of, New Jersey's labor and anti-discrimination laws concerning this employee. *See Int'l Shoe, supra,* 326 *U.S.* at 320, 66 *S.Ct.* at 160, 90 *L.Ed.* at 104. Telebright offers no explanation as to why the additional effort of calculating and paying the CBT would constitute an undue burden on its conduct of interstate commerce.

Affirmed.

---

[7] Our Supreme Court has construed the *Bellas Hess* "bright line" test as being limited to sales and use taxes, as opposed to the CBT tax. *See Lanco, Inc. v. Dir., Div. of Taxation,* 188 *N.J.* 380, 383, 908 *A.*2d 176 (2006), *aff'g* 379 *N.J.Super.* 562, 879 *A.*2d 1234 (App.Div.2005), *cert. denied,* 551 *U.S.* 1131, 127 *S.Ct.* 2974, 168 *L.Ed.*2d 702 (2007). Thus, a foreign corporation that licenses intellectual property to a New Jersey customer, in return for royalties, is deemed to be doing business in this State and is subject to the CBT. *Ibid.*