**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0159-18T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

TOBY D. WELLINGTON, a/k/a
TOBY DEAN WELLINGTON,
and TROY WELLINGTON,

    Defendant-Appellant.

_____

Submitted November 4, 2019 – Decided  December 31, 2019

Before Judges Sabatino and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Warren County, Indictment No. 10-03-0106.

Joseph E. Krakora, Public Defender, attorney for appellant (Howard Woodley Bailey, Designated Counsel, on the brief).

Richard T. Burke, Warren County Prosecutor, attorney for respondent (Dit Mosco, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Toby Wellington appeals from a June 26, 2018 Law Division order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

I.

We summarized the evidence elicited at defendant's trial when we affirmed defendant's convictions for second-degree conspiracy to commit armed robbery, first-degree armed robbery, and second-degree possession of a weapon for an unlawful purpose. State v. Lane, No. A-0584-11 (App. Div. Feb. 27, 2014), certif. denied, State v. Lane, 219 N.J. 628 (2014). For context, we briefly restate the pertinent evidence as supplemented by additional facts gleaned from the PCR proceeding.

On November 4, 2009, Jignesh Patel was working in the Greenwich Township delicatessen he owned. While Patel and his brother were making sandwiches, a man wearing a white hoodie walked into the deli and stood by the register. When Patel went to attend to the customer, the man told Patel to open the drawer of the cash register. After Patel asked the man to repeat the statement, the man displayed a wood-handled gun and again told Patel to open the register and emphasized that he was "not kidding." Patel opened the register,

A-0159-18T3

and the gunman reached over the counter, grabbed cash out of the drawer, and ran out of the deli.

During the incident, Sergeant David Voll of the Greenwich Township Police Department happened to be in the deli, seated at a table in the rear. Patel's brother told Voll that they had just been robbed. Voll ran outside and saw a "slight gray color four door [vehicle], which [he] thought was a Pontiac," traveling at a fast rate of speed through the parking lot. After exiting the parking lot, the vehicle headed westbound. Voll radioed a description of the vehicle to his dispatcher and returned to police headquarters where he retrieved his vehicle and headed in pursuit of the Pontiac.

As confirmed by his statements on 911 transcripts, Voll was unable to see the license plate number of the vehicle, but he did inform his dispatcher that the vehicle had a Pennsylvania license plate. Acting on the information available at that time, another police officer stopped a vehicle matching the physical description provided by Voll, but with a Pennsylvania plate number different from the one later furnished by an eyewitness. Upon further investigation, the police officer cleared that vehicle.

Conor O'Brien, a regular customer of the deli, testified at trial that he was with Russell Bruch and Lori Kocher when a white male wearing a "designer

kind of hoodie" bumped into Kocher as he exited the deli, and proceeded to enter a grayish blue "late 90 early 2000 . . . four door . . . Pontiac Grand Am or Bonneville." O'Brien stated that after he witnessed the man in the hoodie enter the vehicle, he memorized the license plate of the vehicle and "began to tell [Bruch] to find [him] a pen . . . to write it down because [he] remembered it, but . . . wanted to write it down to be sure."

He further testified that after he and Bruch wrote down the license plate number, Bruch gave the number to the store owner who O'Brien believed was on the phone with police. O'Brien stated that he also told police officers of the license plate "[a]t a later time." According to PCR counsel, Detective Michael Patricia was the investigating officer who the State claimed received the license plate number from a witness at the scene.

New Jersey State Police (NJSP) Trooper Susan Stafford-Mistretta received a dispatch relating to an armed robbery and was told to look for a Pontiac with a Pennsylvania license plate. Mistretta proceeded to the Northampton Street Bridge, connecting Phillipsburg, New Jersey, to Easton, Pennsylvania, where she observed a vehicle fitting the description of the Pontiac. She radioed dispatch and other police units that she had the suspect vehicle in sight and followed the Pontiac across the bridge. After several blocks,

the Pontiac accelerated and began to exceed the speed limit. Mistretta activated her lights, but the car failed to stop and made an abrupt left turn. After a short distance, the Pontiac stopped and the driver and a passenger, later identified as defendant and George Lane, got out of the vehicle and ran.

NJSP Trooper Jack Fuhrmann joined Mistretta in the pursuit and pulled up behind where she had parked. He observed the driver and passenger get out of the Pontiac and run in opposite directions. He saw both men again about twenty minutes later after they had been arrested and identified defendant as the driver and Lane as the passenger.

NJSP Trooper Craig Hyson responded to the location in Easton where the Pontiac stopped and joined in the search. Along with NJSP Sergeant Robert Paruta and Captain Michael Vangelo of the Easton Police, Hyson found Lane hiding in an alley between two buildings, approximately two blocks from where the Pontiac was abandoned.

Easton Police Detective Thomas Beiser also joined in the pursuit of defendant. After walking through a wooded area, Beiser spotted defendant and ordered him at gunpoint to raise his hands and stop. After other officers responded to the area, defendant was taken into custody. Beiser recovered $170 in cash from the area where he first spotted defendant.

5

The Pontiac was towed from Easton to the county impound yard and secured. Detective Sergeant Rich Hummer obtained a warrant to search the vehicle. During the search, a white hooded sweatshirt was found on the floor behind the driver's seat. A hockey mask, a baseball cap, and an envelope addressed to defendant by a Pennsylvania county human services office were found in the trunk. A second sweatshirt, hooded and black, was found in the vehicle. Hummer took photographs of the vehicle and the items recovered during the search. When Hummer showed the photograph of the white sweatshirt to Patel, he identified it as the one worn by the person who robbed him.

Detective James McCormick of the Warren County Prosecutor's Office testified at trial that the owner of the Pontiac was Kelly Thompkins, who lived in Pennsylvania. The license plate on the Pontiac was not registered to the vehicle. Thompkins testified that she owned the Pontiac, but her daughter, Kendra, who had been living with defendant and was pregnant with his child, was the one who used the car.

Defendant was charged in a multi-count indictment with second-degree conspiracy to commit armed robbery, contrary to N.J.S.A. 2C:5-2(a)(1) and N.J.S.A. 2C:15-1(a)(2); first-degree armed robbery, contrary to N.J.S.A. 2C:15-

1(a)(2); second-degree possession of a weapon for an unlawful purpose, contrary to N.J.S.A. 2C:39-4(a); and third-degree receiving stolen property, contrary to N.J.S.A. 2C:20-7.

At trial, the court was made aware that a juror might have witnessed defendant handcuffed and shackled while walking down the hallway during a recess. The court voir dired the juror at sidebar on the record to discuss the alleged incident and asked whether the juror came in contact with any of the attorneys, parties, or anyone during the break, to which the juror answered in the negative. The juror indicated that he or she merely "stepped out of the bathroom and an officer was there."

According to the trial transcript, defendant's counsel made no remarks during the court's sidebar conversation with the juror. When defendant subsequently reiterated his alleged encounter to the court, however, the court asked which juror defendant observed, and his counsel responded that it was the same juror the court questioned "[a]t the end of the lunch break."

The State dismissed the receiving stolen property charge and the jury convicted defendant of the remaining counts. The court sentenced defendant on the armed robbery charge to a term of twelve years with an 85% period of parole ineligibility pursuant to the No Early Release Act. See N.J.S.A. 2C:43-7.2. The

court sentenced defendant on the conspiracy and weapons charge to a term of five years, to be served concurrently with the armed robbery conviction. As noted, we affirmed defendant's convictions on direct appeal, but remanded to correct the judgment to reflect the mergers of the conspiracy and weapons convictions into the armed robbery conviction.

Defendant filed a timely pro se PCR petition alleging ineffective assistance of counsel. His assigned counsel subsequently filed an amended verified petition for PCR and accompanying brief that incorporated by reference the arguments in defendant's pro se brief and sought relief on additional grounds.

In PCR counsel's brief, defendant maintained that: 1) his Fifth and Sixth Amendment rights to be present and confront witnesses were violated when the court and prosecutor held ex parte discussions with a juror, 2) the trial court erred in failing to assess mitigating factors on the grounds raised in defendant's pro se petition, 3) the court should have conducted an evidentiary hearing because he established a prima facie case of ineffective assistance and other constitutional violations, and 4) his PCR petition was not procedurally barred by Rule 3:22-4 or Rule 3:22-5.

PCR counsel also claimed defendant's counsel was ineffective for failing to: 1) request a hearing on juror impartiality and to remove a potentially biased

juror, 2) call Detective Michael Patricia and Russell Bruch as witnesses, 3) investigate and introduce 911 transcripts or recordings into evidence, 4) file a motion for discovery and a <u>Brady</u>[1] motion, 5) request a <u>Wade</u>[2] hearing, 6) request a cross-racial jury instruction, 7) prepare a meaningful investigation and defense at trial, 8) ask witnesses certain questions that he requested, and 9) that all such errors, even if independently harmless, when viewed cumulatively, deprived him of his rights under the federal and state constitutions. Defendant also claimed that but for his attorney's ineffective assistance, the result of the proceeding would be different as he would have been acquitted.

After hearing oral arguments, Judge H. Matthew Curry issued a comprehensive written opinion and accompanying order denying defendant's petition. The court first rejected defendant's Fifth and Sixth Amendment claims as procedurally barred by <u>Rule</u> 3:22-4, finding that defendant should have raised such claims on direct appeal. The court noted defendant "knew of the alleged ex parte communication between the . . . court and the juror at the time of the appeal, as clearly it had been placed on the record the day that it occurred," and "knew which witnesses were called at trial." The court also noted that defendant

---

[1] <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

[2] <u>United States v. Wade</u>, 388 U.S. 218 (1967).

A-0159-18T3

did not cite any new rule of constitutional law that would entitle defendant to PCR.

Judge Curry also concluded that defendant failed to satisfy the two-part test for ineffective assistance of counsel detailed in Strickland v. Washington, 466 U.S. 668 (1984), and adopted by the New Jersey Supreme Court in State v. Fritz, 105 N.J. 42 (1987) (Strickland /Fritz). The court noted that to establish a claim for ineffective assistance, a "defendant must show that counsel's performance was deficient," and that "the deficient performance prejudiced the defense." Fritz, 105 N.J. at 52 (quoting Strickland, 446 U.S. at 687).

As to the first prong, Judge Curry rejected defendant's claim that his counsel was constitutionally ineffective for failing to request a hearing on juror impartiality and to remove a potentially biased juror who allegedly "[saw] him in handcuffs in the hallway during a recess." The court stated that there could have been "a reasonable justification for [his trial counsel] not moving for such a hearing," including that the "hearing was unnecessary," that "the juror didn't see . . . defendant," that the juror "remained capable of being objective," or that "such a motion would have been futile." Judge Curry also concluded that "given the weight of the evidence against [him], there [was] little to no reasonable

probability that the outcome of the trial would have been any different" had counsel proceeded as defendant now requested.

The court similarly rejected defendant's claim that his trial counsel was ineffective because she failed to call Patricia and Bruch as witnesses. Judge Curry held that defendant's assertions similarly failed under both prongs of the Strickland/Fritz test because he did not specifically identify what testimony Patricia or Bruch would have provided that would have been beneficial to him, and he did not present sufficient evidence to surmount the strong presumption that his counsel's performance was reasonable under the circumstances. The court noted that without any evidence as to what these two witnesses would have testified to, there was insufficient proofs to establish with a reasonable probability that the proceeding would have concluded differently, and defendant's assertion that he would have been exonerated was "speculative, at best."

Judge Curry also rejected defendant's claim that his counsel was ineffective for allegedly failing to investigate and introduce the 911 transcripts or recordings into evidence. The court reasoned that defendant failed to establish, in light of the substantial evidence supporting his guilt, that introducing the 911 transcripts would have affected the jury's verdict.

11

On appeal, defendant identifies the following arguments for our consideration:

POINT I

THE [PCR] COURT ERRED IN DENYING THE DEFENDANT'S PETITION FOR [PCR] WITHOUT AFFORDING HIM AN EVIDENTIARY HEARING TO FULLY ADDRESS HIS CONTENTIONS THAT HE FAILED TO RECEIVE ADEQUATE LEGAL REPRESENTATION FROM TRIAL COUNSEL[.]

A. THE PREVAILING LEGAL PRINCIPLES REGARDING CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL, EVIDENTIARY HEARINGS, AND PETITIONS FOR [PCR][.]

B. DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS ATTORNEY FAILED TO OBJECT TO THE COURT'S EX-PARTE COMMUNICATIONS WITH THE STATE AND A JUROR AFTER DEFENDANT WAS SEEN BY THE JUROR IN PRISON GARB, HANDCUFFS[,] AND SHACKLES[.]

C. DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS ATTORNEY FAILED TO CALL TWO WITNESSES TO TESTIFY ABOUT HOW THE LICENSE PLATE NUMBER WAS OBTAINED AND WHO PROVIDED IT TO THE POLICE[.]

POINT II

THE COURT MISAPPLIED ITS DISCRETION IN APPLYING [RULE] 3:22-4 AS A PROCEDURAL

BAR AGAINST THE DEFENDANT'S FILING FOR [PCR].[3]

## II.

We review the legal conclusions of a PCR court de novo. State v. Harris, 181 N.J. 391, 419 (2004) (citing Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). The de novo standard of review applies to mixed questions of fact and law. Harris, 181 N.J. at 420. Where, as here, an evidentiary hearing has not been held, it is within our authority "to conduct a de novo review of both the factual findings and legal conclusions of the PCR court." Id. at 421. We apply that standard here.

An evidentiary hearing on a PCR petition is required where a defendant establishes a prima facie case for PCR under the standard established by the United States Supreme Court in Strickland, 466 U.S. at 686, and the existing record is inadequate to resolve defendant's claim. State v. Porter, 216 N.J. 343, 354 (2013) (citing R. 3:22-10(b)); see also State v. Preciose, 129 N.J. 451, 462-

---

[3] Defendant has neither raised on appeal, nor briefed, the majority of the arguments he made before the PCR court. We, accordingly, deem those issues waived. See Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2019) ("[A]n issue not briefed is deemed waived."); Telebright Corp. v. Dir., N.J. Div. of Taxation, 424 N.J. Super. 384, 393 (App. Div. 2012) (deeming a contention waived when the party failed to include any arguments supporting the contention in its brief).

A-0159-18T3

63 (1992). Under Strickland, a defendant first must show that his or her attorney's handling of the matter "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688; see also Fritz, 105 N.J. at 58. A defendant also must show there exists a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694; see also Fritz, 105 N.J. at 60-61. A failure to satisfy either prong of the Strickland/Fritz standard requires the denial of a PCR petition. Strickland, 466 U.S. at 700; State v. Nash, 212 N.J. 518, 542 (2013); Fritz, 105 N.J. at 52.

III.

Based upon these principles and our review of the record, we affirm the court's June 26, 2018 order substantially for the reasons expressed by Judge Curry in his comprehensive written opinion. As the PCR court correctly concluded, defendant failed to establish a prima facie case of ineffective assistance of counsel and thus an evidentiary hearing was not required. See State v. Preciose, 129 N.J. at 462-63 (1992). We add the following comments to amplify the court's decision.

In point I.B., defendant argues that his trial counsel's representation was constitutionally deficient because "his attorney failed to object to the court's ex

14

parte communication with a juror who was questioned about seeing [defendant] in prison clothing and shackles." He further claims that his counsel was ineffective for failing to request a hearing on "juror impartiality" and by failing to request removal of the potentially biased juror.[4] We disagree.

First, the factual predicate for defendant's claim is based on his allegation that a juror saw him "shackled and handcuffed." On this point, during his trial defendant addressed the court directly and stated that, "I would just like to note . . . that when we were going out I directly ran into juror number [eight] to the point where I could identify him as being juror number [eight] and he looked me in my eye . . . ." Defendant further stated that "[he felt] that's highly prejudic[ial] for [the juror] to see [him] in handcuffs . . . [while] walking down the hall," and that he "just want[ed] it on the record." The court, however, specifically explained to defendant that it "questioned the juror at side[]bar . . . [and asked] whether or not he had seen you or anybody else," but that "the juror denied that he had seen anybody."

---

[4] In point II, defendant also argues that the court misapplied Rule 3:22-4 when it concluded that defendant's petition was procedurally barred. Because we agree with Judge Curry that defendant's petition failed to satisfy the Strickland/Fritz test, we need not address whether any of defendant's claims were also barred by Rule 3:22-4.

15

Second, defendant contends that his counsel was not present when the court conducted its voir dire of the juror. That claim, however, is also unsupported by the trial or PCR record. Indeed, defendant failed to provide an affidavit, certification, or statement from his counsel or any other witness, to support his claim that his counsel was absent during the court's voir dire with the juror. In addition, neither the court nor any other counsel noted counsel's absence. Further, when defendant addressed the court, the court asked him which juror he was referring to and his counsel stated that defendant was referring to the same juror discussed "[a]t the end of the lunch break." That exchange fully supports the conclusion that counsel was present during the sidebar conversation with the court.

In light of the fact that the juror specifically stated that he did not see defendant, there was no basis for counsel to file an application to excuse the juror or for other relief. We also note that defendant failed to establish that his right to a fair trial was in any way impacted or that the jury's decision would have been different, particularly where the evidence of guilt against defendant was overwhelming. See also State v. Sykes, 93 N.J. Super. 90, 94 (App. Div. 1966) (holding that absent a showing of prejudice, the fact that jurors saw a

prisoner handcuffed outside the courtroom as a precaution against escape did not entitle prisoner to PCR).

IV.

Finally, in point I.C., defendant argues his counsel was constitutionally ineffective for failing to call Patricia and Bruch to testify regarding how police obtained the license plate number of the vehicle he was driving. We again disagree.

Specifically, defendant claims that Patricia's and Bruch's "testimony would establish several facts that were important to the defense," as Bruch "never stated [in his interview with police] that he had provided the license plate number to [them]." Defendant further claims that his trial counsel failed to question Bruch at trial to establish whether he wrote down the license plate number and to whom who he relayed it. He further claims that Patricia's testimony was vital because he was the investigating police officer at the crime scene, but he was never called to testify as to the accuracy of the license plate number or how that number was relayed to police.

We agree with Judge Curry that these claims also fail to satisfy the two-prong Strickland/Fritz test because among the other trial evidence supporting defendant's guilt, the 911 transcript indicated that shortly after the robbery an

17

eyewitness provided police the license plate number matching the plate on defendant's vehicle.

As to Patricia, Judge Curry acknowledged that Voll testified during the grand jury proceedings that "O'Brien provided . . . Patricia with the license plate number," but at trial, O'Brien testified that Bruch, not he, "provided the license plate number to the storeowner who provided it to someone else, likely the police." In addition to providing the license plate number to Bruch, however, O'Brien testified that he also gave the license plate number to police at a later time. Thus, defendant's argument that Patricia's testimony might demonstrate inconsistencies in the accuracy of the plate number or how it was relayed was hardly significant, as O'Brien's testimony was not incompatible with the conclusion that an eyewitness communicated the information to police.

As to Bruch, defendant points only to Bruch's pretrial statement where he failed to identify defendant's license plate number. According to the transcript of his statement, however, Bruch was neither questioned about the license plate number nor did he deny giving the number to anyone at an earlier time. Furthermore, police interviewed Bruch at 1:37 p.m., but the 911 transcript confirms that police received the correct license plate number from an eyewitness sometime between 12:38 p.m. and 12:44 p.m.

Defendant also asserts that the his trial counsel was ineffective because she "fail[ed] to investigate and introduce the 911 transcripts."[5] The record indicates, however, that at the start of a February 28, 2011 motion hearing, the court asked defendant's counsel whether defendant had an opportunity to "see the tape." Defendant's counsel responded that "[they] were just listening to the . . . audio of the 911 call," but that it "goes on quite some" and they would continue reviewing it "during the break."

Further, it is unclear how the introduction of the 911 transcript would have benefited defendant. According to the transcript, police officers initially pulled over a vehicle with a license plate number different from the plate number given to police because it matched the physical description of the suspect vehicle provided by Voll who was in the deli at the time of the incident. The transcript then indicated that an eyewitness at the deli subsequently provided the actual license plate of the suspect vehicle to police officers. As noted, the evidence of defendant's guilt was overwhelming, and defendant failed to establish how the outcome of the trial would have been different had his counsel submitted the 911 transcripts into evidence.

---

[5] We note that defendant's merits brief fails to include a point heading addressing this specific argument as required by Rule 2:6-2(a)(6). We glean his argument from the body of his brief.

A-0159-18T3

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0159-18T3