# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4972-15T1
            A-4973-15T1

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

    Plaintiff-Respondent,

v.

C.I. and T.K.,

    Defendants-Appellants.

_____

IN THE MATTER OF THE GUARDIANSHIP
OF C.T.K., C.S.K., J.C.K, J.M.K.,
I.J.K. and I.C.K., minors.

_____

Submitted September 11, 2017 - Decided September 29, 2017

Before Judges Accurso and O'Connor.

On appeal from Superior Court of New Jersey,
Chancery Division, Family Part, Union
County, Docket No. FG-20-0007-15.

Joseph E. Krakora, Public Defender, attorney
for appellant C.I. (Dorian Smith, Designated
Counsel, on the brief).

Joseph E. Krakora, Public Defender, attorney
for appellant T.K. (Steven E. Miklosey,
Designated Counsel, on the brief).

Christopher S. Porrino, Attorney General,
attorney for respondent (Andrea M.
Silkowitz, Assistant Attorney General, of
counsel; Ellen L. Buckwalter, Deputy
Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law
Guardian, attorney for minors (Joseph H.
Ruiz, Designated Counsel, on the brief).

PER CURIAM

In this consolidated matter, defendants C.I. and T.K. appeal from a final judgment terminating their parental rights to their six children, C.T.K., C.S.K., J.C.K., J.M.K., I.J.K. and I.C.K., now ages fourteen to four. They contend the Division of Child Protection and Permanency failed to prove the four prongs of the best interests standard of N.J.S.A. 30:4C-15.1a(1)-(4) by clear and convincing evidence.[1] The Law Guardian for the children joins with the Division in urging we affirm the judgment. Having considered defendants' arguments in light of the record and controlling law, we affirm the termination of their parental rights.

---

[1] C.I., although claiming the Division failed to prove all four prongs, has not offered an argument on the first prong. Accordingly, we deem the issue abandoned. See Telebright Corp. v. Director, 424 N.J. Super. 384, 393 (App. Div. 2012); see also Pressler & Verniero, Current N.J. Court Rules, comment 5 on R. 2:6-2 (2017) ("It is, of course, clear that an issue not briefed is deemed waived.").

The facts are fully set forth in the trial court's very detailed 111-page opinion, and we do not repeat them here. We need only note the family first came to the Division's attention in June 2010 when it substantiated C.I. for neglect based on the older children's failure to regularly attend school. The Division substantiated both C.I. and T.K. for inadequate supervision in April 2011 when it found the children dirty and not properly clothed.

A few months later, the five oldest children were removed from their parents' care after the Division received another referral that C.I. and T.K.'s home was again in deplorable condition, and the children had been left overnight with C.I.'s eighteen-year-old brother, whom C.I. had already conceded was an inappropriate supervisor. T.K. reported he and C.I. had separated, and he was sleeping in his car. He claimed that upon returning the children from an outing late in the evening after he had left home, C.I. was nowhere to be found and C.I.'s brother and "about 10 guys [were] in the house lying around and outside on the porch drinking and shit all up and through the house." The Division worker found the children unkempt and dirty and a bag of drugs left on the floor. Two of the children were found to have dried feces on their buttocks. The children were behind on their immunizations and needed dental care.

A-4972-15T1

For the next two years, the Division attempted to assist defendants in overcoming the conditions that led it to remove their children. The Division referred them to substance abuse treatment after positive drug screens, and individual and couples counseling and anger management classes in response to episodes of domestic violence. It provided defendants parenting skills classes, and arranged for therapeutic supervised visitation, psychological evaluations and therapy. The Division worked toward reunification with the couple when they were together and worked separately with each when they were apart. It repeatedly attempted to have defendants acknowledge C.I.'s diagnosed mental health problems and the risks they posed for the couple's children.

Some progress was made. Defendants attended therapy, reconciled, and completed parenting-skills classes. There were several negative random drug screens. In August 2013, C.I. gave birth to the couple's sixth child, I.C.K. Defendants agreed to comply with all court ordered services, find permanent housing and accept homemaker services, and the baby was released to their care. The Division assisted them with utilities in a new four-bedroom apartment and provided them furniture. It referred defendants to Family Preservation Services for weekly in-home

monitoring in anticipation of their reunification with their five older children.

The family was reunited in January 2014 when the Division returned the five older children to their parents. T.K. was employed as a long-haul trucker and was on the road for twelve of every fourteen days, however, and C.I. quickly became overwhelmed with caring for the children in his absence. The eldest child, C.T.K., refused to go to school and was very disruptive. The Division arranged for him to be screened, and a psychiatrist recommended a day-treatment program where the boy could receive educational services as well as counseling to aid him in his adjustment to living with his parents and siblings. Another child was on the autism spectrum and had special needs. The Division advocated for the family with the county welfare department for assistance with housing, medical coverage and food stamps.

In late February, barely six weeks after reunification, the Division learned the family had been evicted from their apartment, a fact defendants had concealed from their attorneys, the Division and the court, and that the entire family was living in C.I.'s mother's one-bedroom apartment. A mentor for the second-eldest child, C.S.K., reported to the Division that the girl claimed not to have eaten since the prior afternoon,

A-4972-15T1

and that she and her older brother, then ten, had been left at home alone to care for their younger siblings for the past three nights. The Division substantiated both parents for neglect due to inadequate supervision and removed all six children from their care.

C.T.K. and J.C.K. returned to the resource home in which they had lived previously and were joined by their baby brother, I.C.K. C.S.K. also returned to her prior resource home and J.M.K. and I.J.K. were placed together in a new resource home. The children were residing in those same homes at the time of trial with resource parents committed to adopting them. The Division's expert opined that disrupting the secure attachments the children had forged with their resource parents would cause the children enduring harm.

The Division continued to provide services to defendants following their failed reunification, but they were largely non-compliant, refusing to participate in therapy and accept other services. Their attendance at visitation was sporadic and the visits were often chaotic. Defendants blamed the children for the chaos and the older children for the reports to the Division that resulted in the breakup of the family. In February 2015, the court ordered that C.I. and T.K. be limited to seeing only three children at a time in order to prevent defendants from

6

being overwhelmed by having to interact with all of their children at one time.

That same month, C.S.K. reported she had been sexually abused by C.I.'s brother four years earlier. C.I. was uncontrollably angry over the revelation. Neither defendant believed her, and the Division could not establish the allegations. Nevertheless, the Dorothy B. Hersch Regional Child Protection Center recommended the child receive counseling by a professional in the area of child sexual abuse and be screened for sexually-transmitted diseases.

Based on his detailed rendition of the facts adduced at trial and his assessments of the credibility of the witnesses who testified, the judge found the Division established all four prongs of the best interests standard by clear and convincing evidence. He found defendants harmed their children by failing to provide them a safe and stable home, failing to address their identified parenting deficiencies, minimizing their problems and blaming the children for the removals instead of accepting responsibility for their continued failure to adequately care for them. He found the persistence of defendants' parenting deficiencies after a failed attempt at reunification, their unwillingness to reengage in services and their minimization of their own problems while casting blame on their children and the

Division demonstrated their unwillingness to recognize or eliminate the harm they had inflicted.

Cataloging the many services the Division provided both defendants, the judge concluded the Division had easily met its obligation to provide them the services they needed to correct the conditions that led to the children's placement. The judge also found the Division had explored, without success, alternatives to termination, assessing, and ruling out, all friends and relatives put forth by C.I. and T.K.

Finally, the judge concluded, based on the expert testimony, that termination of defendants' parental rights would not do more harm than good. He relied on the results of the positive bonding evaluations between the children and their resource parents and the expert's testimony that the children were not safe in their parents' care. The judge concluded the children deserved the stability and permanency their parents had been unwilling or unable to provide and that termination of their rights would further that end.

Our review of a trial court's decision to terminate parental rights is limited. N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448-49 (2012). We generally "defer to the factual findings of the trial court because it has the opportunity to make first-hand credibility judgments about the

witnesses who appear on the stand; it has a 'feel of the case' that can never be realized by a review of the cold record." N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008) (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 293 (2007)).

Our review convinces us the trial judge's findings are amply supported by the trial testimony. Defendants never managed to be able to provide these children with a safe and stable home at any point after they were removed from their care in 2011. As the judge several times noted, the five older children had spent fifty-seven of the sixty months preceding his decision in the care of resource families, and I.C.K. had lived with his resource parents for all but six months of his life.

Defendants failed to visit consistently while their children were being cared for by others, and could not even manage supervised visitation with all of their children at one time. "A parent's withdrawal of that solicitude, nurture, and care for an extended period of time is in itself a harm that endangers the health and development of the child." In re Guardianship of D.M.H., 161 N.J. 365, 379 (1999). We reject defendants' assertion that the Division sabotaged reunification by returning all five older children to them at one time.

We are satisfied the record supports the judge's findings that defendants harmed the children by their neglect and inability to properly care for them, that they refused and failed to complete the services offered, that their plans for reunification were wholly unrealistic and that termination of their parental rights will not do more harm than good.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4972-15T1