**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3025-23

M & M WHOLSESALE
DISTRIBUTORS,

 Plaintiff-Respondent,

v.

SAM'S WHOLESALE, LLC,

 Defendant-Appellant,

and

MAHMOUD ABDEL-WAHAD,[1]

 Defendant.

_____

Submitted June 4, 2025 – Decided June 13, 2025

Before Judges Mayer and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-6362-22.

George J. Cotz, attorney for appellant.

---

[1] Improperly pled as Mahmoud Wahab.

Sammarro & Zalarick, PA, attorneys for respondent (Gary J. Zalarick, on the brief).

PER CURIAM

Defendant Sam's Wholesale, LLC (Sam's) appeals from the April 18, 2024 Law Division judgment in favor of plaintiff M & M Wholesale Distributors (M&M) in the amount of $26,147.44 in this book account matter.[2] We affirm.

## I.

On November 29, 2022, M&M, a wholesale distributor of candy, cigarettes, and tobacco products, filed a complaint in the Law Division alleging it provided $26,222.44 worth of goods to Sam's upon Sam's promise to pay for those goods. M&M alleged it made a demand for payment, which Sam's refused.

The court held a one-day bench trial at which Mukesh Papaiya testified on behalf of M&M as follows. M&M had a twenty-year business relationship with Sam's. Mahmoud Abdel-Wahab, a principal of Sam's, regularly placed

---

[2] Sam's case information statement indicates it is appealing the May 31, 2024 order denying its motion for reconsideration of the April 18, 2024 judgment. However, because Sam's made no substantive arguments with respect to the May 31, 2024 order in its brief we consider its appeal from that order waived. "[A]n issue not briefed is deemed waived." Pressler and Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2025); see also Telebright Corp., Inc. v. Dir., Div. of Tax., 424 N.J. Super. 384, 393 (App. Div. 2012) (deeming a contention waived when the party failed to include any arguments supporting the contention in its brief).

A-3025-23

orders with M&M for cigarettes and other tobacco products over the telephone.[3] Abdel-Wahab or a Sam's employee would come to M&M's place of business to pick up the products, for which M&M would deliver an invoice. Although M&M often obtained a signature on invoices when the products were picked up, it did not always do so.

M&M ordinarily did not extend credit for its products beyond one week. Sam's, however, frequently made partial payments on its invoices, often not paying them in full for three or four weeks. Also, when it picked up products, Sam's often gave M&M post-dated checks for outstanding invoices. M&M understood it would not deposit those checks until the dates reflected on them, which M&M considered a courtesy to Sam's. Ordinarily, it was M&M's practice not to allow customers to pick up new orders until all outstanding invoices had been paid.

M&M produced invoices which were admitted into evidence establishing it provided cigarettes and tobacco products to Sam's on November 18, 2019, with a cost of $20,147.44. In addition, on January 30, 2020, M&M charged Sam's $6,000 because a check in that amount submitted by Sam's to M&M as

---

[3] Abdel-Wahab was named as a defendant. M&M stipulated to the dismissal of the claims against him.

payment on a prior invoice was rejected twice for insufficient funds. On November 18, 2019 and November 19, 2019, M&M charged Sam's five assessments of $15 each for bank fees incurred by M&M for checks submitted by Sam's as payment on other invoices that were rejected for insufficient funds. Once the returned check and bank fees were added to the outstanding November 18, 2019 invoice, Sam's had an unpaid balance due of $26,222.44. M&M, which waived a claim for interest and attorney's fees, sought that amount from Sam's.

Papaiya recalled that Abdel-Wahab picked up the November 18, 2019 order. M&M did not obtain a signature from Abdel-Wahab, who did not pay Papaiya for the products he received. As of that date, Sam's had an outstanding balance of $6,000 from a November 8, 2019 order. Abdel-Wahab gave M&M a post-dated check for $6,000, which M&M considered payment on Sam's outstanding balance.

Papaiya remembered Abdel-Wahab picked up the November 18, 2019 order because a few days later Abdel-Wahab returned to M&M asking to pick up more cigarettes. As of that date, the $6,000 check for the November 8, 2019 order had been returned by the bank for insufficient funds and the November 18, 2019 invoice was not paid. Papaiya declined to provide any additional products to Abdel-Wahab and terminated M&M's business relationship with Sam's.

A-3025-23

The wholesale tobacco products industry is heavily regulated. M&M is authorized to place tax stamps on tobacco products. Sam's, as a tobacco sub-jobber, does not have that authority. M&M is required to file monthly reports with the Division of Taxation (Division) stating the amount of tax-stamped cigarettes it sold to each sub-jobber. M&M included the November 18, 2019 sale in its monthly report to the Division of the number of cigarettes it sold to Sam's in November 2019. Papaiya testified he sent Abdel-Wahab the November 8, 2019 and November 18, 2019 invoices and a registered letter seeking payment of Sam's outstanding balance.

Abdel-Wahab also testified. He claimed he placed Sam's last order with M&M on November 8, 2019, and paid Sam's outstanding balance. After that date, he decided to terminate Sam's business relationship with M&M. Abdel-Wahab did not recall placing an order with M&M on November 18, 2019, and denied picking up products from M&M on that date. He denied receiving the November 18, 2019 invoice or any communications from M&M seeking to collect an outstanding balance.

He agreed he routinely gave M&M post-dated checks when he or one of his employees picked up an order. Abdel-Wahab further testified those checks always cleared before Sam's picked up a new order because M&M would not

5

fill a new order unless Sam's had no outstanding invoices. In addition, M&M would not allow Sam's to pick up a new order unless it obtained a signature acknowledging the products had been received.

According to Abdel-Wahab, as of November 8, 2019, when Sam's picked up its last order from M&M, it had no outstanding balance because it had provided a $6,000 post-dated check to M&M. In addition, although the $6,000 check initially was rejected for insufficient funds, it was cleared by the bank in December 2019, satisfying Sam's invoice for the November 8, 2019 order. However, Abdel-Wahab could not explain a notation on the $6,000 check from the bank dated December 27, 2019 stating, "return reason not authorized. NSF." That bank record was admitted as evidence.

At the conclusion of the trial, the court issued an oral decision in favor of M&M. The court found Papaiya's testimony to be credible. It noted he testified largely without the aid of notes and had a good recollection of the parties' interactions. While the court recognized Abdel-Wahab appeared candid and knowledgeable about the subject matter of his testimony, the documentary evidence admitted at trial called his credibility into question. The court found M&M kept "meticulous records that track the monies in and out of the company

6

for each of the customer accounts" and those records corroborated Papaiya's testimony.

The court found the parties entered a contract for the sale and purchase of tobacco products. In addition, based on the "great deal of exactitude in the evidence presented by M&M," the court found Papaiya was "completely credible" when he detailed the debits and credits on Sam's account. The court found "it d[id]n't make sense . . . that he would have charges on November 18th" for products "that just weren't picked up" by Sam's. The court explained: "It's just not credible based upon what I'm confronted with. I don't find it to be inherently believable."

The court rejected Abdel-Wahab's testimony he did not receive any communications from M&M with respect to the outstanding balance for the November 18, 2019 invoice. In addition, the court disbelieved Abdel-Wahab's testimony Sam's did not have an outstanding balance on the November 8, 2019 invoice. The court found his testimony to be contradicted by the documentary evidence that Abdel-Wahab gave M&M a post-dated check for $6,000 on November 8, 2019. The court found that M&M proved this check was declined by Sam's bank on December 27, 2019 for insufficient funds and never subsequently honored.

7

The court also found Abdel-Wahab's testimony M&M would not give him products without obtaining a signature to lack credibility. The court noted invoices from past transactions between the parties without signatures were admitted as evidence. Thus, the court concluded Sam's received the products reflected in the November 18, 2019 invoice in the amount of $20,147.44. In addition, the court found the $6,000 check Sam's submitted on the prior invoice was never honored. The court rejected M&M's claim for $75 in bank fees for declined checks, finding M&M produced no proof Sam's agreed to pay such fees. The court, therefore, found M&M was entitled to entry of judgment in the amount of $26,147.44. An April 18, 2024 judgment memorialized the court's decision.

Sam's subsequently moved for reconsideration of the April 18, 2024 judgment.

On May 31, 2024, the court issued a written decision denying the motion. The court rejected Sam's argument that the court "misunderstood the testimony of [Abdel-Wahab] as it related to the way he dealt with" M&M. The court noted Sam's did not identify any evidence overlooked by the court and concluded reconsideration was not warranted merely because Sam's disagreed with the court's decision. In addition, the court rejected Sam's argument it relied on

documents not admitted into evidence, noting the exhibits were admitted and its decision hinged largely on the testimony of the two witnesses. A May 31, 2024 order memorialized the trial court's decision.

This appeal follows. Sam's argues the trial court's findings of fact and conclusions of law are not supported by competent, relevant, and reasonably credible evidence.

## II.

"Our review of '[f]inal determinations made by the trial court sitting in a non-jury case . . . [is] limited and well-established.'" Balducci v. Cige, 456 N.J. Super. 219, 233 (App. Div. 2018) (alterations in original) (quoting Seidman v. Clifton Sav. Bank, 205 N.J. 150, 169 (2011)). The trial court's findings of fact are "binding on appeal when supported by adequate, substantial, credible evidence." Ibid. (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). "[W]e do not disturb the factual findings and legal conclusions of the trial [court] unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ibid. (alterations in the original) (quoting In re Forfeiture of Pers. Weapons & Firearms Identification Card Belonging to F.M., 225 N.J. 487, 506 (2016)).

We have reviewed the record and find no basis on which to disturb the trial court's findings of fact and conclusions of law. The record amply supports the trial court's conclusion the parties entered a contract for the purchase of tobacco products and Sam's breached that contract by failing to pay for the products it received, as reflected in the November 18, 2019 invoice. In addition, the record supports the trial court's finding that Sam's $6,000 check for the prior invoice was never honored.

To the extent we have not specifically addressed any of Sam's remaining claims, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division