**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3323-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ONDRE H. WEEKES, a/k/a
ANDRE WEEKS,

    Defendant-Appellant.

_____

        Submitted February 2, 2026 – Decided February 26, 2026

        Before Judges Sabatino and Natali.

        On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 16-04-1358.

        Jennifer N. Sellitti, Public Defender, attorney for appellant (Louis H. Miron, Designated Counsel, on the brief).

        Theodore N. Stephens, II, Essex County Prosecutor, attorney for respondent (Shep A. Gerszberg, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Ondre Weekes appeals the trial court's May 3, 2024 order denying his petition for post-conviction relief ("PCR") after an evidentiary hearing. We affirm.

We incorporate by reference the facts and procedural history recited in our October 2021 opinion on direct appeal upholding defendant's convictions and sentence. State v. Weekes, No. A-2524-18 (App. Div. October 5, 2021). Briefly stated, defendant was found guilty of armed robbery and weapons offenses and sentenced to an aggregate ten-year custodial term, subject to parole ineligibility period mandated by the No Early Release Act, N.J.S.A. 2C:43-7.2.

Those convictions stem from a February 2016 incident when seventeen-year-old Zafar Cantine was flagged down by defendant while skateboarding to a friend's house. Defendant asked Cantine if he could borrow his phone to call his girlfriend because he had been locked out of his house. Cantine gave defendant his cellphone and observed him dialing but grew concerned after he noticed that defendant was not typing "full ten digit[ ]" numbers. Cantine thought defendant was "faking," and he was now in a "bad situation." Cantine accordingly backed away from defendant and stood approximately three feet away. Defendant asked Cantine if he wanted anything out of his bookbag to which Cantine declined because he believed defendant was referring to illegal

narcotics.

After defendant attempted to dial another number, he put the phone into his jacket pocket and placed his hand into the bookbag. Defendant told Cantine to "be cool," proceeded to pull out a kitchen knife, and swung it at him. Cantine successfully blocked defendant's attempt, and the knife did not pierce his clothing or skin.

Cantine testified that defendant was wearing "dark clothing" and gray Nike Jordans, and that defendant was "pretty tall compared to [him]." Cantine further explained that defendant was holding his cellphone by his waist and the light from the phone was shining on defendant's face during this encounter.

Defendant fled the scene and Cantine initially chased after him until he realized that defendant still had a knife. Cantine then stopped a vehicle, explained to the driver that he had just been robbed and asked her to call the police. The driver, however, pulled away, which led Cantine to believe that she had not contacted the police. The driver did, however, call 911 and the call was played at trial.

Cantine proceeded to a nearby hair salon and again explained that he had just been robbed and requested that an employee call the police, which she did. Portions of that 911 call were also played at trial.

A-3323-23

When law enforcement arrived, Cantine provided them with defendant's physical description, including the clothes he was wearing and the fact he was carrying a black bookbag. The police quickly located an individual matching the Cantine's description nearby, but when they approached him, defendant fled and ignored the officer's commands to stop. He was quickly apprehended, detained, and arrested. Following a search of his bookbag incident to that arrest, the police seized a collection of knives, a cellphone, pills, and marijuana.

The police transported Cantine to the arrest location where he positively identified defendant as his assailant and specifically noted his clothing and footwear. He identified and unlocked his cellphone that was found in defendant's bookbag and also identified the knife that was used in the attack.

One of the officers completed a "show up identification procedures worksheet" on the day of the incident. The form indicated that the officer had instructed Cantine "that the actual perpetrator may or may not be in procedure or show up and that the witness should not feel compelled to make an identification." The form also noted that the officer instructed Cantine "not to discuss identification procedure, whether an identification was made or not, with any other witness or witnesses, or obtain information for other sources." Finally, the form acknowledged that Cantine made a positive identification based on

defendant's "mustache . . . and the gray sneakers." Despite the fact that multiple police vehicles involved were equipped with dashboard cameras, the police failed to preserve any recordings depicting the arrest or identification process.

Before trial, the court conducted a Wade[1] hearing to address defendant's application to suppress Cantine's show up identification. The court, after addressing the applicable system variables delineated in State v. Henderson, 208 N.J. 208 (2011), denied defendant's motion. The court found the officer provided Cantine with appropriate pre-identification instructions and advised him "that the person detained may or may not be the perpetrator" and that he "should not feel compelled to make an identification." The court also concluded that Cantine "was not given any information about defendant" and that the show up occurred "within a reasonable time . . . shortly after the incident."

Cantine testified at trial where he again positively identified defendant as his assailant. During his testimony, he also discussed a surveillance tape of the incident introduced by the State that recorded part of the interaction from a street corner and a nearby gas station. The State also called the 911 dispatcher and three officers involved in defendant's arrest and interrogation. Finally, the State introduced inculpatory physical evidence, including the bookbag, its contents,

---

[1] United States v. Wade, 388 U.S. 218 (1967).

A-3323-23

and defendant's clothing.

Defendant successfully moved pursuant to State v. Reyes, 50 N.J. 454 (1967), to dismiss one of the drug charges, and the State dismissed a number of other charges in the indictment prior to deliberations. The jury subsequently convicted defendant of first-degree robbery, unlawful possession of a weapon, and possession of a weapon for unlawful purposes, and found him not guilty of aggravated assault, resisting arrest by force, and resisting arrest by flight.

Defendant appealed his convictions and sentence and argued the court erred when it denied his motion to suppress Cantine's identification and improperly admitted the identification testimony at trial. He also argued the court provided an inadequate jury instruction that the "officers' failure to record the eyewitness proceeding could be used in evaluating the credibility of the eyewitness testimony." He also challenged the court's decision to admit the 911 calls as violative of his confrontation rights and his sentence.

As noted, we affirmed defendant's convictions and sentence. Weekes, slip op. at 2. Defendant filed a petition for certification with the Supreme Court but withdrew the application. Instead, he filed a timely PCR petition, which he also initially withdrew, but resubmitted and later supplemented with a brief filed by appointed counsel.

In his revised submission, defendant contended his trial counsel was constitutionally deficient under the two part test established in Strickland v. Washington, 466 U.S. 668 (1984), as adopted in New Jersey by State v. Fritz, 105 N.J. 42 (1987) because he: 1) was unprepared for trial and did not file an application for an adjournment, and 2) failed to request an appropriate jury charge regarding law enforcement's failure to record Cantine's identification.[2]

Further, in his self-represented submission defendant maintained, consistent with his counsel's advocacy at trial, that he did not rob Cantine, but they were instead involved in an aborted drug transaction. Defendant maintained "questions and inconsistencies" with respect to their interaction "would have held more weight if we have the entire surveillance [recording]." He contended the State only introduced select portions of the footage "due to the fact that the recorded [incident] in its entirety would have contradicted" the officers' and Cantine's testimony. After considering the parties' oral arguments, the court determined an evidentiary hearing was necessary to address

_____

[2] Defendant has not reprised all of the arguments he raised before the PCR court. We accordingly discuss and address only those contentions that defendant raises before us and consider all unbriefed arguments waived. See Telebright Corp. v. Dir., N.J. Div. of Tax'n, 424 N.J. Super. 384, 393 (App. Div. 2012) (deeming a contention waived when the party failed to include any arguments supporting the contention in its brief); Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2026) ("[A]n issue not briefed is deemed waived.").

defendant's <u>Strickland</u>-based claims.

At the hearing, defendant's trial counsel detailed his trial preparation and strategy and also explained that he was ready for trial despite receiving the file from another attorney shortly before trial. He disputed any claim that an adjournment was necessary and explained he discussed the file with defendant's previous counsel. Counsel explained he had been assigned the case "roughly two weeks" after a conflict arose, and the reassignment "made sense" because he was handling a "full … trial list . . . in that court already." He testified he was prepared and did not need more than the two weeks to prepare for trial because it was a "pretty straightforward case," despite only having conducted one other jury trial as a public defender.

He stated he assessed the strength of the State's case by "looking at all the evidence, the police reports, . . . statements from . . . complaining witness, . . . surveillance footage, [and] also considering the evidence that [it] did[ not] have." He explained when evaluating the case, he determined there were "some problematic factors" including defendant's arrest in the area while in possession of the cell phone and other inculpatory physical evidence. He also stated he was aware that defendant's prior counsel held a similar opinion with respect to defendant's case, had advised defendant accordingly, and defendant had

indicated to prior counsel that he "felt pretty firmly about going to trial."

In preparation for trial, counsel testified he met with defendant "[a]t least once," where he "confirmed that he received discovery from prior counsel" and he had explained his own assessment of the case to him, "making sure he understood the exposure, what the plea offer [was], and . . . what problems I thought there were." Counsel testified he remembered the plea was for six years, subject to NERA, in light of another robbery charge defendant had pending at the time. He explained he did not "detect any issues" in his relationship with defendant and recalled him "not having a lot of questions."

Counsel also explained his theory of the case, specifically that he believed "it was not a robbery" but rather a "drug deal that had gone wrong . . . to explain how [defendant] came to be in possession of the phone without it being a robbery." He stated this narrative was not his only trial strategy and explained how he planned to "attack and undermine the State's theory and their witnesses" through cross-examination. Counsel recalled attacking the victim's credibility on a number of issues and inconsistencies concerning the alleged robbery that "did not make sense." He testified to his efforts to attack the officers' credibility, including their inconsistencies with respect to the allegation of the use of force against defendant and with respect to Cantine's jacket that the police failed to

A-3323-23

preserve and which allegedly was slashed during the robbery.

Counsel further explained the efforts behind some of the other key decisions at trial. He stated that defendant specifically decided to testify at trial and the conversations they had with respect to that decision. He also discussed the preparations he made for his successful Reyes motion and the objections with respect to the 911 call.

Defendant also testified at the hearing and stated he believed his trial counsel only had seven days to prepare for trial, not two weeks, and he felt counsel's efforts to discredit the officers with respect to the alleged use of force were inaccurate. He stated his counsel "meant to do the right thing, but he just did not have enough time" and further testified he did not understand why his previous counsel, with whom he had a "great" relationship, was removed from the case. He also stated he urged counsel to seek an adjournment and testified he met with his counsel only once for, at most, an hour.

In a May 3, 2024 order and written decision Judge Karina D. Fuentes denied defendant's petition and concluded he failed to establish a prima facie claim of ineffective assistance of counsel under Strickland. The court first rejected defendant's argument that his counsel's performance was constitutionally ineffective for failing to prepare adequately for trial or seek an

adjournment. The court found counsel reviewed the evidence, consulted with defendant's former counsel, independently developed a trial strategy, and met with defendant. The court clearly credited defendant's counsel's testimony over defendant's, despite noting both appeared "sincere," and determined based on counsel's testimony at the evidentiary hearing, and the trial record, there was no support for the conclusion counsel's representation fell below acceptable professional standards or that defendant was prejudiced by any of counsel's actions or inactions, including his failure to request a trial adjournment or in failing to object the jury instruction on the identification issue.

This appeal followed in which defendant raises the following point for our consideration:

> POINT I
>
> THE PCR COURT ERRED IN RULING THAT DEFENDANT RECEIVED THE EFFECTIVE ASSISTANCE OF COMPETENT TRIAL COUNSEL WHERE COUNSEL DID NOT HAVE SUFFICIENT TIME TO PREPARE FOR TRIAL AND THUS FAILED TO MAKE NECESSARY OBJECTIONS WITH RESPECT TO THE JURY CHARGE AND THE SURVEILLANCE VIDEO SHOWN TO THE JURY.

Defendant contends again that his trial counsel's performance was constitutionally deficient because he did not sufficiently prepare for trial after being substituted for prior counsel shortly before jury selection and stated he

met with him only once. He maintains, under the circumstances, his trial counsel should have sought an adjournment to permit adequate time to prepare and to "obtain and review the entire surveillance video." That purported lack of preparation also resulted in his counsel's failure to make necessary and appropriate objections relating to the identification jury charge and the admission of a surveillance video.

With respect to the jury instruction issue, defendant maintains his counsel failed to seek an appropriate instruction under State v. Anthony, 237 N.J. 213 (2019) and Rule 3:11(b). He also reprises his self-represented argument that his counsel failed to object to the surveillance video that the State moved into evidence because it contained but a partial recording of the incident. Defendant explains that the omitted portions would have supported further his theory that the incident was not a robbery but a drug transaction gone bad. He maintains these omissions deprived him of his constitutional right to the effective assistance of counsel under both the United States and the New Jersey Constitutions and under the circumstances, prejudice should be presumed, or, in the alternative, he demonstrated a reasonable probability that but for counsel's errors the outcome of the trial would have been different under Strickland's prejudice prong.

Having considered these arguments in light of the record and the applicable law, we affirm the PCR court's denial of defendant's petition, substantially for the sound reasons expressed in Judge Fuentes' written opinion. We add the following comments to amplify our decision.

Our review of a PCR claim after a court has held an evidentiary hearing "is necessarily deferential to [the] PCR court's factual findings based on its review of live witness testimony." State v. Nash, 212 N.J. 518, 540 (2013). We review the legal conclusions of a PCR court de novo. State v. Harris, 181 N.J. 391, 419 (2004). The de novo standard of review also applies to mixed questions of fact and law. Id. at 420.

To establish a deprivation of the Sixth Amendment right to the effective assistance of trial counsel, a convicted defendant is required to satisfy the two-part test enunciated by the United States Supreme Court in Strickland v. Washington, 466 U.S. at 690 (1984), demonstrating that: (1) counsel's performance was deficient; and (2) counsel's deficient performance prejudiced the accused's defense. Id. at 687; see also Fritz, 105 N.J. at 58. In reviewing such ineffective assistance claims, courts apply a strong presumption that defense counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466

U.S. at 690. "[C]omplaints 'merely of matters of trial strategy' will not serve to ground a constitutional claim of inadequacy . . ." Fritz, 105 N.J.at 54 (citation omitted); see also State v. Echols, 199 N.J. 344, 357-59 (2009).

Here, we concur with the judge's determination that defendant has not presented a prima facie claim of ineffective assistance under Strickland. First, we find no support for defendant's argument that his counsel was ill-prepared for trial based on the timing of his assignment or for failing to seek an adjournment. As the trial record and the record from the evidentiary hearing confirm, defendant's counsel was clearly prepared for trial. He met with defendant, formulated a trial strategy consistent with defendant's then, and now, theory of the case that the incident reflected a consensual drug transaction not a robbery, properly objected at trial when appropriate, was successful in the dismissal of one of the drug charges based on his Reyes application, and received an acquittal on a number of other serious charges after the State voluntarily dismissed other charges. Simply put, as Judge Fuentes correctly found, defendant has failed to establish that his counsel's actions when preparing for trial or his representation during trial were constitutionally ineffective or that any alleged deficiency in his performance affected the outcome of the trial. Fritz, 105 N.J. at 57-63.

For similar reasons, we reject defendant's argument that his counsel was ineffective for failing to object to the court's jury instructions. As Judge Fuentes noted, we rejected defendant's challenge to the sufficiency of the jury charge related to law enforcement's failure to preserve the dash cam footage on direct appeal. Although we reviewed the issue under a plain error analysis, we were nevertheless satisfied the entire charge accurately recited the law and instructed the jury appropriately regarding the consequences of the police's failure to preserve the videos and other evidence. Weekes, slip op. at 10. We also held that the "court properly introduced evidence of Cantine's show up identification, and the court sufficiently instructed the jury regarding law enforcement's failure to preserve the dash cam videos and other evidence related to the show up identification." Ibid. In addition, we were satisfied "jury properly considered both the credibility of the officers' testimony and the reliability of the identification procedure" and despite acknowledging that the "charge was not as robust as defendant claims is required under Rule 3:1l(d)," we are convinced it did not result in unjust convictions. Id. at 9.

We observe also that before us defendant has not specifically identified what language in State v. Anthony his counsel should have requested the court include in the charge. Indeed, we note that the court specifically informed the

15

jury that the police "failed to preserve the video recordings from the [dash]cam recordings . . . [and] the Use of Force Report in this case." The court also instructed the jury it could consider those failures when evaluating the identification evidence when determining credibility of the officers. In any event, we are unconvinced that defense counsel's failure to object to the charge prejudiced defendant at trial or with respect to his appeal.

Defendant's final argument that the court erred in denying his petition because his counsel failed to request that the entire surveillance footage be played for the jury or request an adjournment to review the footage is easily dismissed. First, nothing in the trial or PCR record supports any argument that the State edited the surveillance footage. In defendant's appendix in support of his direct appeal, he included a description of the surveillance videos played during Cantine's testimony. There simply is no support in the record before us for the contention that the State or defendant's counsel failed to play the videos available, or that any portion of the video factually supports his present conclusory claims. Simply put, defendant failed to establish his counsel's performance was constitutionally deficient under Strickland's first prong on this point.

Further, defendant has failed to establish, as is his obligation under

<u>Strickland</u>'s prejudice prong that the allegedly edited videos would have impacted Cantine's identification of him or the inculpatory evidence found in his bookbag after he fled the scene. On this point, we also note that defendant failed to provide any such evidence at his evidentiary hearing either during his direct testimony or on cross-examination that another angle of the video, or a separate portion of the video, supported any of his claims.

To the extent we have not addressed any of defendant's remaining claims, it is because we have determined they lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division